Case No. 21-6245

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

CURT TOMLINSON
Plaintiff-Appellant

vs.

KRAUSS-MAFFEI, CORPORATION
Defendant-Appellee

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

---

**BRIEF OF PLAINTIFF-APPELLANT CURT TOMLINSON**

---

David Torchia (0015962)
Tobias, Torchia & Simon
302 Mercantile Center
120 E. Fourth Street
Cincinnati, Ohio 45202
(513) 241-8137
davet@tktlaw.com
Attorney for
Plaintiff-Appellant

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT


| | | |
|---|---|---|
| CURT TOMLINSON | ) | |
| | ) | |
| v. | ) | No. 21-6245 |
| | ) | |
| KRAUSS-MAFFEI CORP., | ) | |


## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 25, Curt Tomlinson makes the following disclosure:

1.      Is said party a subsidiary or affiliate of a publicly-owned corporation?
        <u>No</u>

        If the answer is YES, list below the identity of the parent corporation
        or affiliate and the relationship between it and the named party:

2.      If there a publicly-owned corporation, not a party to the appeal, that
        has a financial interest in the outcome?   <u>No</u>

        If the answer is YES, list the identity of such corporation and the
        nature of the financial interest:


s/ David Torchia                    April 11, 2022
(Signature of Counsel)              (Date)


ii

## TABLE OF CONTENTS

<u>Item</u>                                                                                            <u>Page</u>

Disclosure of Corporate Affiliations and Financial Interest............................ ii

Table of Authorities ....................................................................................... iv

Statement of Subject Matter and Appellate
Jurisdiction..................................................................................................... ix

Rule 9 (d) Statement in Support of Oral Argument........................................x

STATEMENT OF THE ISSUES ....................................................................1

STATEMENT OF THE CASE ........................................................................2

      A.    Nature Of The Case And Introduction .......................................2

      B.    Course Of Proceedings And Disposition
              In The Court Below.....................................................................3

      C.    Statement Of The Facts ...............................................................3

SUMMARY OF ARGUMENT ..................................................................... 17

ARGUMENT .................................................................................................. 20

      A.    Standard of Review ................................................................... 20

      B.    The District Court Erred in Granting Summary
              Judgment on Plaintiff's Failure-to-Accommodate Claim ....... 21

      C.    The District Court Erred in Granting Summary
              Judgment on Plaintiff's Retaliation ........................................ 41

CONCLUSION............................................................................................. 41

CERTIFICATE OF COMPLIANCE............................................................ 42

CERTIFICATE OF SERVICE ...................................................................... 42

DESIGNATION OF RECORD CONTENTS .............................................. 43

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................... 20

*Arndt v. Ford Motor Co.*,
716 Fed. App'x 519 (6th Cir. 2017) ..................................................... 23, 32

*Barnes v. GenCorp, Inc.*,
896 F.2d 1457 (6th Cir. 1990 ...................................................................... 15

*Beck v. University of Wisconsin Board of Regents*,
75 F.3d 1130 (1996)...................................................................................... 20

*Berlin v. Michigan Bell Tel. Co.*,
858 F.2d 1154 (6th Cir. 1988) ..................................................................... 19

*Brumley v. United Parcel Serv., Inc.*,
909 F.3d 834 (6th Cir. 2018) ....................................................................... 22

*Bultemeyer v. Fort Wayne Community Schools*,
100 F.3d 1281 (1996) .................................................................................. 43

*Burdett-Foster v. Blue Cross & Blue Shield of Michigan*,
574 Fed.App'x 672 (6th Cir. 2014) ................................................. 29, 30, 34

*Cehrs v. Northeast Ohio Alzheimer's, et al.*,
155 F.3d 775 (6th Cir. 1998) .............................................................. 25, 27

*Charalambakis v. Asbury University*,
488 S.W.3d 568 (Ky. 2016)......................................................................... 21

*Deister v. Auto Club Ins. Ass'n.*,
91 F. Supp 3d 905 (ED Mich. 2015) .......................................................... 29

*Deister v. Auto Club Ins. Ass'n.*,
647 Fed.App'x 652 (6th Cir. 2016) ............................................................. 25

v

*Everly v. Everly*,
958 F.3d 442 (6th Cir. 2020) ........................................................... 37

*Green v. Brennan*,
578 U.S. 547 (2016)....................................................................... 37

*Hedrick v. W. Reserve Care Sys. & Forum Health,*
355 F.3d 444 (6th Cir.2004) .......................................................... 25

*Jackson v. Regal Beloit Am., Inc.*,
2018 U.S. Dist. LEXIS 103682 (E.D. Ky. Jun. 21, 2018)........................... 21

*Kand Medical, Inc. v. Freund Medical Products, Inc.*,
963 F.2d 125 (6th Cir. 1992) ........................................................ 20

*Kennedy v. Dresser Rand Co.*,
193 F.3d 120 (2nd Cir. 1999) ........................................................ 27

*Keough v. Concentra Health Servs., Inc.*,
752 Fed.App'x 316 (6th Cir. 2018) ................................................. 21

*Kleiber v. Honda of Am. Mfg., Inc.,*
485 F.3d 862 (6th Cir. 2007) .............................................. 21, 22,

*Kraus v. Sobel Corrugated Containers, Inc.*,
915 F.2d 227 (6th Cir. 1990) ........................................................ 19

*Lafata v. Church of Christ Home for the Aged*,
325 Fed.Appx. 416 (6th Cir. 2009)................................................. 23

*Laster* v. *City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ........................................................ 36

*Logan v. Denny's, Inc.*,
259 F.3d 558 (6th Cir. 2001) ........................................................ 25

*Ne. Ohio Coal. for the Homeless v. Husted*,
831 F.3d 686 (6th Cir. 2016) ........................................................ 37

*Reeves v. Sanderson Plumbing Products Inc.,*
530 U.S 133 (2000) ...................................................................... 19

*Rorrer v. City of Stow,*
743 F.3d 1025 (6th Cir. 2014) .................................................... 29

*Roush v. Weastec, Inc.,*
96 F.3d 840 (6th Cir. 1996) ........................................................ 18

*Singfield v. Akron Metro. Housing Authority,*
389 F.3d 555 (6th Cir. 2004) ...................................................... 20

*60 Ivy Street Corp. v. Alexander,*
822 F.2d 1432 (6th Cir. 1987) .................................................... 19

*Smith v. Ameritech,*
129 F.3d 857 (6th Cir. 1997) ...................................................... 34

*Smith v. Henderson,*
376 F.3d 529 (6th Cir. 2004) ...................................................... 39

*Talley v. Family Dollar Stores of Ohio,*
542 F.3d 1099 (6th Cir. 2008)........................................... 22, 35, 39

*Tchankpa v. Ascena Retail Grp., Inc.,*
 951 F.3d 805 (6th Cir. 2020) ..................................................... 37

*Tinsley v. Caterpillar Fin. Servs., Corp.,*
766 F. App'x 337, 342 (6th Cir. 2019) ....................................... 25

*Taylor v. Phoenixville School. Dist.,*
184 F.3d 296 (3rd Cir. 1999) ...................................................... 20

*Tolan v. Cotton,*
572 U.S. 650, 134 S.Ct 1861 (2014) ........................................... 19

*US Airways, Inc. v. Barnett,*
535 U.S. 391 (2002).................................................................... 26

## **STATUTES**

28 U.S.C. § 1331 ........................................................................ viii

28 U.S.C. § 1367 ....................................................................... viii

29 C.F.R. §1630.2 (o) ........................................................... 24, 31

29 C.F.R. §1630.2(o)(3) ............................................................. 28

42 U.S.C §12101 ……………………………………………...viii, 21

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

In the district court, Plaintiff asserted discrimination in violation of the Americans with Disabilities Act (ADA) 42 U.S.C. § 12101 and KRS § 344. 010 *et seq*. The trial court had jurisdiction over the claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

**Rule 9(d) STATEMENT IN SUPPORT OF ORAL ARGUMENT**

Appellant requests oral argument in support of this appeal.  Argument will assist the Court by allowing the parties to answer questions the Court may pose regarding the facts giving rise to Appellant's claims and the law that applies to their resolution.

## STATEMENT OF THE ISSUES

1.      Did the district court err in granting Defendant's motion for summary judgment on Plaintiff's claim that Defendant failed to accommodate his disability?

2.      Did the district court err in concluding as a matter of law that Plaintiff could not establish a constructive discharge?

3.      Did the district court err in granting Defendant's motion for summary judgment on Plaintiff's retaliation claim?


Appellant asserts that the answer to the above is "yes."

# I.    STATEMENT OF THE CASE

## A.    Nature of the Case and Introduction

This is a case of disability discrimination.  Plaintiff suffers from Post-Traumatic Stress Disorder (PTSD). He had an unpleasant and hostile interaction with John Wiley, his supervisor. Plaintiff needed to take time off. While on leave, he asked about a change in supervision. Plaintiff's request was reasonable under the circumstances. Plaintiff had very little interaction with Wiley.  Most of Plaintiff's work was directed by Aeric Bouza, a Service Coordinator. Rather than engage in the ADA's mandatory interactive process, Defendant flatly refused Plaintiff's request because it did not fit Defendant's "structure." No other reason was provided. There was no discussion about other ways that the supervision of Plaintiff could be modified to address his disability and his desire to avoid another negative interaction with Wiley that could again trigger a serious mental health event.

Reasonable alternatives existed and there was no undue hardship.  In fact, shortly before Plaintiff's constructive discharge, Defendant's managers considered having Bouza do evaluations instead of Wiley. And during the next evaluation period, that is what happened.

As argued below, the district court erred when it determined that Plaintiff's request for accommodation was unreasonable and that he was not

constructively discharged.

**B.    Course of Proceedings and Disposition of The Case**
   **In The District Court**

Plaintiff filed this action on May 31, 2019. (RE 1, Complaint, Page ID # 1).  He asserted claims for disability discrimination in violation of the ADA and Kentucky Revised Code § 344. 010. Plaintiff also alleged that Defendant retaliated against him in violation of the ADA and KRS. (Id.).

Following discovery, Defendant filed a motion for summary judgment. (RE 46 Motion, Page ID #460). Plaintiff responded. (RE 50, Response in Opposition, Page ID # 534). Defendant filed a reply memorandum. (RE 56, Page ID # 718).

On December 8, 2021, the district court granted Defendant's motion and entered judgment for Defendant. (RE 62, Memorandum Opinion and Order, Page ID # 744 and RE 63, Clerk's Judgment, Page ID # 770). Plaintiff filed a notice of appeal on December 29, 2022. (RE 65, Notice of Appeal, Page ID # 772).

**C.    Statement of the Facts**

Plaintiff began his employment with Defendant in early June of 2016. He worked as a Field Service Engineer (FSE). As an FSE, Plaintiff's basic duties were to go to customer sites and install, service, and perform

maintenance on machines operated by Defendant's customers. (Id. at 83, Page ID # 315). Each time Plaintiff went to a customer site perform a repair, maintenance, or any other work, both Plaintiff and the customer would sign a Service Report detailing the work that was done. (Id. at 85, Page ID # 315). The customer's signature indicated that the work was satisfactorily completed. (Id. and 85 at Page ID # 316; RE 50-1, Tomlinson Declaration, Ex. 1, Page ID # 567-73).

Although John Wiley, the Service Manager, was Plaintiff's nominal supervisor, Aeric Bouza, the Service Coordinator for Injection Molding, effectively filled that role. (Doc. 45, Tomlinson depo at 77, 87-88, Page ID # 313, 316). Bouza would make work assignments for Plaintiff and was available for technical assistance. (Id.). Wiley testified that Bouza would direct the service technicians from site to site and also troubleshoot over the phone with the customer and service technicians. (RE 45 at Page ID # 193). Wiley agreed that Bouza had more day-to-day contact with the field service engineers than Wiley. (Id.). Bouza also provided input regarding Plaintiff's performance when Wiley did Plaintiff's evaluations. (Id. at Page ID # 208, 216).

### 2.     Plaintiff's Disability

Plaintiff suffers from PTSD.  The initial traumatic event was a sexual assault that occurred in 1984 while Plaintiff was in the Marines.  (RE  45, Tomlinson depo. at 11, 22, Page ID # 300 and RE 50-1, Tomlinson Dec., Page ID # 563). As Plaintiff got older, the assault and unpleasant memories began to bother him more. (RE 45 Tomlinson depo. at 11, Page ID # 297).

In February of 2017, Plaintiff told Randy Hemmerle, Defendant's Director of Human Resources, that he suffered from PTSD. (RE 45, Tomlinson depo. at 98-99, Page ID # 319 and Ex. 7 at Page ID # 412). Plaintiff had previously been harassed by Mark Bigos, a coworker.  (Id. at 100-101, Page ID # 319). The anxiety built up over time.  (Id. and 106-107, Page ID # 321). Plaintiff told Hemmerle that he could not work in an environment where he felt bullied or harassed. (Ex. 7, Page ID # 412).

### 3.     Plaintiff's 2016 Evaluation

Defendant's annual evaluations cover the employee's work for the calendar year. (RE  44, Wiley depo. at 22, Page ID # 201). The evaluation process typically began in the fall of the year. (Id. at 29, Page ID # 208). The goal was to complete the evaluation and have it reviewed by Human Resources by February of the following year. (Id. at 30, Page ID # 209).

In March of 2017, Plaintiff received his performance evaluation for period June – December 2016. (Id. at 30-31, Page ID # 209-210). Wiley rated Plaintiff as "meeting expectations." (RE 45, Tomlinson depo. at 119 and. RE 45-9, depo. Ex. 9 at Page ID # 419). Plaintiff had no problem with the review. (RE 45, Tomlinson depo. at 119, Page ID # 324).

### 4.    Plaintiff's 2017 Evaluation

On March 1, 2018, Wiley contacted Plaintiff to deliver Plaintiff's evaluation for 2017. (RE 44, Wiley depo. at 45, 48, Page ID # 224, 227 and Ex. 23). Plaintiff was off work to take his father to a cancer center. (Id. at 45, # 224 and RE 50-2 at Page ID # Wiley depo. Ex. 24 at Page ID # 578). Plaintiff did not speak with Wiley before March 14, 2018, when Wiley emailed Plaintiff the evaluation purporting to cover his performance for January 1, 2017 – December 31, 2017. (RE 44, Wiley depo. at 22, Page ID # 201 and depo at 50, Page ID # 229 and Ex. 12, Doc. 45-12, Page ID # 425; RE 52 Hemmerle depo. at 34, Page ID # 690).

Wiley was critical of some aspects of Plaintiff's work. (RE 45-12, depo. Ex. 12, Page ID # 425). The evaluation surprised Plaintiff and "really set off" his PTSD. (RE 45, Tomlinson depo. at 113-114, Page ID # 322). He understood the job had a lengthy learning curve and that he needed more experience in some areas. (Id.). However, no one had said anything to him

6

about any issues or problems during 2017. (RE 50-1, Tomlinson Decl. ¶ 5, Page ID # 563-64). Plaintiff was blindsided and hurt. [1] (RE 45 Tomlinson depo. at Page ID # 113-114).

Plaintiff contacted Randy Hemmerle, the HR Director. (RE 45, Tomlinson depo. at 144 145, Page ID # 330).  Hemmerle suggested that Plaintiff speak with Wiley about the evaluation.  (Id.) Plaintiff did not want to talk to Wiley, but he did so as a favor to Hemmerle.  (Id. at # 330-331). In the meantime, according to Wiley, Hemmerle told Wiley that Plaintiff was not happy with his review. (RE 44, Wiley depo. at 56, Page ID # 235).

Plaintiff and Wiley eventually spoke on March 22, 2018.  Wiley was defensive and threatening. (RE 45, Tomlinson depo. at 150, Page ID # 332; RE 52, Hemmerle depo. Ex. 53).  Wiley was belligerent. (RE 45, Tomlinson depo. at 142-43, Page ID # 330-331).  He was very aggressive and used a threatening tone. (Id. at 149-50, Page ID # 331-332).  Plaintiff could accept constructive criticism, but Wiley belittled him. (Id. at 148, 150-51 Page ID # 332). Wiley said Plaintiff he had not learned anything since the time he was hired. (Id. at 142-43, Page ID # 330). Wiley claimed Plaintiff was calling the company office in Florence too much for help.  (Id.).  Wiley would not let Plaintiff explain his side of the story. (147, 149 Page ID # 331). Wiley told

---

[1] Hemmerle acknowledged that an employee should never be surprised by a performance evaluation. (RE 52, Hemmerle depo. at 39-40 Page ID # 691).

Plaintiff they would have to "agree to disagree." (Id. at 142, Page ID # 330). He told Plaintiff to just sign the review and that it did not matter. (Doc. 45-3, Answer to Interrogatory No. 4, Page ID # 399).

During their conversation, Wiley told Plaintiff that three customers – Bolta, Dr. Schneider's, and IAC – complained about him and did not want him to return to their site. (Doc. 45, Tomlinson depo. at 146, Page ID. # 331; RE 43, Beene-Skuban at 30, Page ID # 138, Beene-Skuban depo. Ex. 36). Wiley did not provide the details to Plaintiff. (RE 45 at 147, Page ID # 331). However, in his deposition, Wiley backed off and testified that Bolta was the only customer who said it would rather have its equipment down than have Plaintiff come back. (RE. 44, Wiley depo. at 59, Page ID # 238). Wiley acknowledged that customers made requests like that from time to time, and that such an occurrence would not be a reason to go to the FSE and tell them they have a complaint. (Id. 59-60 Page ID # 238-39).

Although not mentioned in his March of 2018 conversation with Plaintiff, at his deposition, Wiley said identified Berry Plastics as another customer that provided feedback for the 2017 review. (RE 44, Wiley depo. at 38-39, Page ID # 217- 218). However, the alleged concern regarding Berry Plastics did not occur until late February of 2018, well after the 2017 evaluation period closed. (RE 50-2, Wiley depo. Ex. 26, Page ID # 579). It

8

was not an issue that could have justified Wiley's comments regarding Plaintiff's 2017 evaluation. [2]   In addition, although Wiley told Plaintiff in March of 2018 that were complaints from Dr. Schneider's, in his deposition, Wiley did not recall any about Plaintiff.  (RE  44, Wiley depo. at 61-62, Page ID # 240-241). Instead, he mentioned that Stuart Smith, another FSE, was the subject of complaints by Dr. Schneider's, not Plaintiff. (Id. at 90 Page ID # 269).

In fact, Plaintiff's evaluation was nearly identical to that of Stuart Smith, another FSE. (50-2 Wiley depo. Ex. 31, Page ID # 593).  Except for the name and starting date of employment, every single word, comment, and rating were exactly the same.  (See id. and Doc. 45-12 at Page ID # 425). Because there was a reference to "Stuart" in Plaintiff's evaluation that was corrected after a review by Hemmerle, it appears that Wiley simply took Smith's evaluation, changed the name and starting date, and used it for Plaintiff.  (RE 50-5, Ex. 1, Page ID # 634).

Finally, although Wiley told Plaintiff in March of 2018 that he spoke to other FSEs about Plaintiff's performance, Wiley had not talked to Ryan

---

[2] Plaintiff's 2017 evaluation had been completed and reviewed by Randy Hemmerle in HR as of February 22, 2018, several days before the February 28, 2018 email from Berry Plastics. (RE 50-5 Declaration of Counsel, Ex. 1 at Page ID # 634 and RE 50-2 Wiley depo. Ex. 26 Page ID # 579).

Kremis, an FSE who frequently worked with Plaintiff. (RE 51, Kremis depo. at 6, 10, Page ID # 641, 645; RE 44, Wiley depo. at 19, page ID # 198). Kremis would help out Plaintiff from time to time, and as far as he knew, when Plaintiff left a customer, the machine was running. (Id. at 13, Page ID # 648).

Wiley and Kremis spoke a few weeks later. (RE 51 Kremis depo. at 11 Page ID # 646). At some point during the conversation, Plaintiff was brought up. Wiley indicated that he may have gotten some things wrong about Plaintiff. (Kremis depo. at 17, Page ID # 652).

### 5.  Plaintiff Complains about Discrimination

The evaluation and more particularly, Wiley's subsequent aggressive and demeaning conversation, aggravated Plaintiff's PTSD to the point that he needed time off work. In early May of 2018, he applied for short-term disability benefits. (RE 45, Tomlinson depo. at 163, Page ID # 335, Doc. 45-14, Page ID # 432).  Plaintiff took leave under the FMLA and applied for short-term disability benefits. (Id. at 158-59, Page ID # 334).

On the morning of May 18, 2018, Plaintiff sent an email to Paul Caprio, Defendant's President and CEO. (RE 46-2, Page ID # 486). Plaintiff wrote:

I have tried to state a complaint against John Wiley and no one seems to take this serious. I received my performance review and between the letter in the email and the review itself I find statements made that are false and damaging and I feel he is discriminating against my PTSD. I informed Randy in HR a year ago of my medical condition when having some issues causing complications and I have not asked for any special conditions other than I can't deal with bullying or harassment. John brings up things he has no idea of what he is talking about yet doesn't hesitate to throw me under the bus over them and he needs to be held accountable for them. I had talked to Randy about this and he said to talk to John and when I talked to him each issue I tried to discuss all I got was flippant reply's. I tried dealing with this until it affected my condition to where I had to burn PTO days and recently had to go to the emergency room at the hospital for need of help for my anxiety and depression getting out of control. I am on short term disability under the care of a Psychiatrist who had to increase my meds, John's action have affected me physically and emotionally. In the year and a half I have worked for KM I have done nothing but to try and learn my job and always leaving the customer site with the machine running, I know I have a lot to learn but now because of John's action it will be that much harder because of the time away from work and the complications of being able to concentrate. My condition is a disability and I am tired of people not recognizing it because they cannot see it and I went into lengths explaining this to Randy last year. I have tried to contact Jenny Been-Skuban because I thought she was supposed to deal with complaints but never received any assistance from her and that is why I am moving to the next level. I am greatly disappointed to have a manager that has caused me this suffering, not take my condition seriously and couldn't even give me the time to have a serious discussion about how he came to these conclusions when he didn't know what he was talking about. All I want to do is my job working in a safe environment and I feel John has ruined that. I hope that someone will take this serious and have a talk with me so this can be discussed in more details. I feel if there are reviews to be made the Field Service Engineers make out reviews on him.

(Id.). Randy Hemmerle, the HR Director, called Plaintiff shortly thereafter. (RE 52, Hemmerle depo. at 23 Page ID # 687, and Doc. 45-15, Tomlinson depo. Ex. 15 Page ID # 444).

Plaintiff's emotional state for the next several weeks was very poor. (RE 50-1 Tomlinson Decl. ¶ 6, Page ID # 564). He sought treatment from a psychiatrist who adjusted his medications. (Doc. 45, Tomlinson depo. at 160-61, 167-170, Page ID # 334 -337 and Doc. 45-14, Page ID # 441). He was in a very dark and negative place and found it difficult to communicate. (Tomlinson depo. at 176, Page ID # 338). Plaintiff did not believe that Defendant was taking his complaint and situation seriously. Plaintiff wanted to return to work, but he also needed to feel comfortable and know that the situation was resolved before he could do so. He could not get better and even consider returning to work until he felt comfortable that Defendant would take steps to avoid another hostile and negative interaction with Wiley. (RE 50-1, Tomlinson Decl. ¶ 8, Page ID # 564).

**6.    Defendant's Investigation**

In late July of 2018, Ms. Beene-Skuban investigated Plaintiff's complaint. (RE 45-18, Page ID # 451). She spoke with Plaintiff on July 26, 2018. (Id.). He explained his complaints about Wiley and the evaluation process. (Id.).

12

Ms. Beene-Skuban also spoke with Ryan Kremis. He told her that Plaintiff wanted to learn. (RE 51 at Page ID # 769). He also told her that the manager at Bolta, one of the customers who allegedly complained about Plaintiff, was "crazy." (Id.).  He further stated that he did not know how Wiley would know about Plaintiff's performance other than through Aeric Bouza, the Service Coordinator. (Id.)

Ms. Beene-Skuban also spoke with Aeric Bouza. (RE 45-18 at Page ID # 452). Although Wiley had complained that Plaintiff relied too much on Bouza for technical help, Bouza denied that. He told Beene-Skuban that Plaintiff occasionally called for help, but that "it wasn't too much."  (Id.).

### 7.    **Defendant Denies Plaintiff's Accommodation Requests**

Plaintiff wanted to return to work.  (RE 43 Beene-Skuban depo. at 18, 35 Page ID # 126, 143).  He expected a conference call with Beene-Skuban, Wiley, and Randy Hemmerle before he returned to resolve the situation and to set up a plan for how he could return and avoid further aggravation of his symptoms. (Tomlinson depo. at 188 and RE 45-3, Page ID # 400, RE 50-1, Tomlinson Decl. ¶ 8 Page ID #564).  Plaintiff wanted to have a conversation about what they were going to do to help him feel better about coming back to work. (RE 45, Tomlinson depo. at 158, Page ID # 334).  Plaintiff looked

Case: 21-6245     Document: 27     Filed: 04/11/2022     Page: 24

forward to the group call. (Id. at 174-75). It never happened. (Id. at 158, 188, Page ID # 334, 341).

Plaintiff also proposed that he be able to work with Aeric Bouza rather than Wiley. (Doc. 45, Tomlinson depo. at 203, 221-222 Page ID # 350)("Can I just have it where I am working with Aeric?"; and RE 52 Hemmerle depo. at 29-30, Page ID # 689). Plaintiff's day-to-day work assignments came through Bouza and Plaintiff presented work problems and issues to him for resolution. (Id. at 87-88, page ID # 316). Plaintiff rarely saw Wiley, and Wiley was typically slow to respond to Plaintiff, if at all. (Id. at 188-189, Page ID # 341). Plaintiff wanted to work for someone who was not going to be abusive. (RE 45, Tomlinson depo. at 222, Page ID # 350). He needed to return to work in an environment in which he felt safe. (RE 45 Tomlinson depo. at 205, Page ID # 345).

Ms. Beene-Skuban "bluntly" denied Plaintiff's request to report to Bouza. (RE 45, Tomlinson depo. at 158, Page ID # 334). Ms. Beene-Skuban testified that she would not have been open to allowing Plaintiff to report to anyone other than Wiley because it was not "part of our structure." (RE 43, Beene-Skuban depo. at 36-37, Page ID # 144). She told Plaintiff that if he returned to work, he would have to report to Wiley. (RE 43, Beene-Skuban depo. at 25, 36-37 Page ID # 133, 144-45).

14

**8.     Defendant Changes the Evaluation Process for FSEs at the Conclusion of the Investigation**

Ms. Beene-Skuban concluded her investigation on about August 13, 2018.  (RE  45-18 at Page ID # 451). She determined that there was no discrimination by Wiley. (Id.  at Page ID # 455).

HR Director Hemmerle testified that toward the end of the investigation, the idea was raised to allow Service Coordinators like Bouza to complete the annual performance evaluations for the FSEs like Plaintiff. (RE 52 Hemmerle depo. at 44-45, Page ID # 692-93). On August 21, 2018, Ms. Beene-Skuban and Hemmerle met with Paul Caprio, the CEO, and Chris Chapman, the Vice President of Administration and Finance, to discuss the investigation and "lessons learned." (RE 50-2, Beene-Skuban depo. Ex. 46, Page ID # 616). They discussed having the Coordinators do the evaluations instead of Wiley. (RE  43, Beene-Skuban depo. at 47-48, Page ID # 155-166). The modification in Defendant's evaluation process was consistent with Plaintiff's request to work with Bouza instead of Wiley. Defendant implemented the change and Bouza performed the evaluations for FSEs during the next rating period. (RE 52 Hemmerle depo. at 45, Page ID # 643 and RE 50-2, depo. Ex. 32 at Page ID # 595).

### 9.    **Plaintiff's Constructive Termination**

Plaintiff did not believe that anyone at the company was serious about bringing him back and working with him. (RE 45, Tomlinson depo. at 219-220, Page ID # 349). He sought other work for his own mental health. (Id. at Page ID # 308). Plaintiff applied for a job with Avure in early August of 2018. He provided potential starting dates of August 13 and August 20, 2018. (RE 46-3, Page ID # 523).

On August 8, 2018, Ms. Beene-Skuban told Plaintiff that she was nearing the end of her investigation. (RE 50-2 Ex. 44 at Page ID # 615).

Ms. Beene-Skuban's next communication with Plaintiff was on August 20, 2018. She advised him of some of her findings, including that Wiley had not discriminated against him. (RE 45-19, Tomlinson depo. Ex. 19 at Page ID # 456). She did not tell Plaintiff that she and other top managers like Hemmerle and Caprio were considering having Coordinators like Bouza perform evaluations instead of Wiley. (Id.).

Plaintiff submitted his resignation on August 24, 2018. (RE 45-19, Page ID # 458).   He stated:

> "I am disappointed with how KM has (sic) allowed not to take this discrimination and my disability seriously and as of today I resign . . . It is sad that my career and my mental and physical health had to suffer because of John Wiley."

(Id.). There is no evidence that anyone from Defendant contacted Plaintiff to ask him to reconsider or discuss his decision.

Plaintiff began working at Avure on August 27, 2021. (RE 45, Tomlinson depo. at 52, page ID # 307). His time there was short. He was still feeling the effects of what happened with Defendant. He resigned in late December of 2018. (Id. at 56-57, Page ID # 308).

## II.    <u>SUMMARY OF ARGUMENT</u>

The district court erred when it held that Plaintiff's request for a change in supervision was not a reasonable accommodation. The court noted that such requests are "generally" not reasonable, but if failed to address the specific circumstances presented in this case. Plaintiff worked in the field at customer sites. Wiley did not supervise Plaintiff on a daily basis, and the two had very infrequent contact. Wiley relied on others, including Aeric Bouza, to evaluate Plaintiff's work. Plaintiff already reported to Bouza for his day-to-day work assignments and customer trouble-shooting activities. Allowing Plaintiff to Bouza engage in minimal additional supervisory activities would not have resulted in any undue hardship to Defendant. In fact, unbeknownst to Plaintiff, shortly before Plaintiff's constructive discharge, Defendant discussed having Bouza do evaluations for all of the FSEs in his department, and Defendant implemented that

change for the next evaluation cycle. The district court did not mention or address this important fact in its decision.

The district court also erred when it held that Defendant engaged in the interactive process regarding Plaintiff's request to change supervisors. When Plaintiff asked for a different supervisor, Defendant rejected the request out of hand. There was no discussion or consideration regarding how Defendant could change the method of supervision to allow Plaintiff return to work without having to worry about another negative interaction with Wiley. As noted above, there was a reasonable accommodation available which Defendant was considering, but Defendant never disclosed it to Plaintiff before he was forced to quit.

Finally, the district court erred when it found that Plaintiff failed to create a sufficient dispute of fact regarding his constructive discharge. The situation was intolerable. Defendant refused to accommodate Plaintiff, refused to discuss alternative methods of supervision, and failed to offer any alternatives that would have allowed him to return to work. Jurors could conclude that the situation was intolerable and that Plaintiff's decision to resign was reasonable.

### III.   ARGUMENT

### A.   Standard Of Review

This appeal is subject to de novo review under "the same test as that used by the district court in reviewing a motion for summary judgment." *Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1161 (6th Cir. 1988) *citing Hand v. Central Transport, Inc.,* 779 F.2d 8, 10 (6th Cir. 1985).

The court evaluating a summary judgment motion must construe the evidence in the record and all inferences to be drawn from it in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655 (1962); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987); and *Blakeman v. Mead Co. Containers,* 779 F.2d 1146, 1150 (6th Cir. 1985). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury not required to believe." *Reeves v. Sanderson Plumbing Products Inc.,* 530 U.S 133, 151 (2000).  Disputed facts are to be resolved in favor of the non-moving party.  *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 231 (6th Cir. 1990).

In *Tolan v. Cotton,* 572 U. S. 650, 660, 134 S. Ct 1861 (2014), the Court reinforced the principles applicable to summary judgment. The Court

reversed a decision granting summary judgment where factual disputes existed, and noted:

> The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to Tolan's competent evidence, the court below neglected to adhere to the fundamental principle that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.

The court should not resolve factual disputes by weighing conflicting evidence. It is the jury's role to assess the probative value of the evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986); *Kraus,* 915 F.2d 230. Credibility questions should not be decided on summary judgment. *Anderson*, *supra,* at 249. Questions of motive, intent, and state of mind are rarely appropriate for summary disposition. *60 Ivy Street*, *supra*; *United States Postal Service v. Aikens*, 460 US 711, 716 (1983); *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125 (6th Cir. 1992). In discrimination cases, "an employer's true motivations are particularly difficult to ascertain…thereby frequently making such factual determinations unsuitable for disposition at the summary judgment stage." *Singfield v. Akron Metro. Housing Authority,* 389 F. 3d 555, 564 (6th Cir. 2004).

**B.      The District Court Erred in Granting Summary Judgment
on Plaintiff's Claim Failure-to-Accommodate Claim**

Plaintiff alleged that Defendant discriminated against him in violation

of both the Americans with Disabilities Act (ADAAA), 42 U.S.C. §12101 *et

seq*. and KRS § 344. 010 *et seq*. (Doc. 1, Complaint Page ID # 3, ¶ 15).

Courts apply the same standards to claims under the ADA and KRS § 344.

See *Jackson v. Regal Beloit Am., Inc*., 2018 U.S. Dist. LEXIS 103682 at *

12 (E.D. Ky. Jun. 21, 2018) and *Charalambakis v. Asbury University*, 488

S.W.3d 568, 575 (Ky. 2016).

To establish a prima facie case for the failure to accommodate his

disability, Plaintiff needed to show (1) he is disabled; (2) he is otherwise

qualified for the position, with or without reasonable accommodation; (3) his

employer knew or had reason to know about his disability; (4) he requested

an accommodation; and (5) the employer failed to provide the necessary

accommodation. (RE 62 at Page ID # 761, citing *Keough v. Concentra

Health Servs., Inc*., 752 Fed.App'x 316, 326 (6th Cir. 2018)(citing *DiCarlo v.

Potter*, 358 F.3d 408, 419 (6th Cir. 2004)). When the plaintiff presents a

failure-to-accommodate claim, the case is treated as one involving direct

evidence, and the *McDonnell-Douglas* framework does not apply. *Kleiber v.

Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)("[C]laims

premised upon an employer's failure to offer a reasonable accommodation

necessarily involve direct evidence ... of discrimination."); see also *Brumley v. United Parcel Serv., Inc.,* 909 F.3d 834, 839 (6th Cir. 2018).[3]

The district court held that Plaintiff's accommodation claim failed because he did not adequately engage in the interactive process and because his request for a change in his supervisor was not reasonable under this Court's precedent. (RE 62 at Page ID # 762). The court erred.

When an employee puts an employer on notice that he has a disability, the employer is obligated to engage in an "interactive process" to determine the nature of the disability and the appropriate accommodation. *Talley v. Family Dollar Stores of Ohio,* 542 F.3d 1099, 1110 (6th Cir. 2008). The "interactive process is mandatory and both parties have a duty to participate in good faith." *Kleiber,* supra, 485 F. 3d at 871. The process "requires communication and good-faith exploration of possible accommodations." *Id.;* see also 29 C.F.R. § 1630.2(o)(3). The purpose of the interactive process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.*, quoting 29 C.F.R. § 1630.2(o)(3). Employers who fail to

---

[3] Plaintiff also alleged that Defendant discriminated against him during the evaluation process. The district court held that there was no evidence that Wiley was aware of Plaintiff's disability at the time he completed the evaluation. (RE 62 at Page ID # 760). Plaintiff is not pursuing that part of his claim in this appeal, except as it relates to his constructive discharge.

engage in the interactive process in good faith may face liability under the ADA if a reasonable accommodation would have been possible. *Lafata v. Church of Christ Home for the Aged*, 325 Fed.Appx. 416, 422 (6th Cir. 2009)(quoting *Barnett v. U.S. Air, Inc*., 228 F.3d 1105, 1114 (9th Cir. 2000) (en banc), *vacated on other grounds,* 535 U.S. 391, 122 S.Ct. 1516, 152 L.Ed.2d 589 (2002).

The district court noted that Plaintiff did not request an accommodation until July 17, 2018. (RE 62 at Page ID # 764). However, Plaintiff testified that after he left work in May of 2018, his emotional state deteriorated, and he found it difficult to communicate. (RE 50-1, Tomlinson Decl. ¶ ¶ 6-7 Page ID # 564). This was a symptom of his condition. (Id. ¶ 3 Page ID # 563).

In any event, the relevant time period for analyzing whether the parties engaged in the interactive process does not begin until a request for accommodation is made. See *Arndt v. Ford Motor Co*., 716 Fed.App'x 519, 528 (6th Cir. 2017) (finding that "the district court did not err in determining that the relevant interactive process was not triggered until Arndt was released to return to work with the service-dog restriction and made his second request for accommodation.").

As argued below, Plaintiff made a reasonable request for accommodation in July of 2018. Defendant's subsequent refusal to engage in the interactive process resulted in the failure to accommodate Plaintiff, and ultimately, his constructive discharge.

### 1.    Plaintiff requested a reasonable accommodation

The ADA and KRS require an employer to accommodate disabled employees. It is a violation of the Act for an employer to fail to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). See also KRS § 344.280. When the claim is based on the failure to accommodate, the refusal to accommodate is the adverse action at issue.  See *DiCarlo,* supra 358 F.3d at 419.

Under the ADA, reasonable accommodations include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices ... [or] other similar accommodations for individuals with disabilities. 42 U.S.C. § 12111(9) and 29 C.F.R. §1630.2 (o). An accommodation is "any change in the work environment or in the way things are customarily done that enables

an individual with a disability to enjoy equal employment opportunities." 29 CFR 1630.2(o) and Pt. 1630, App. § 1630.2(o)

A disabled employee "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Kleiber, supra*, 486 F. 3d at 870, quoting *Hedrick v. W. Reserve Care Sys. & Forum Health,* 355 F.3d 444, 457 (6th Cir.2004). "An employer, then, has the burden of persuasion to show that an accommodation would impose an undue hardship." *Hedrick,* 355 F.3d at 457 and *Cehrs v. Northeast Ohio Alzheimer's et al.,* 155 F.3d 775, 782 (6th Cir. 1998).

Plaintiff asked for a change regarding his supervisor. He wanted to work with Aeric Bouza instead of Wiley. (Doc. 45, Tomlinson depo. at 203, 221-222 Page ID # 350). Defendant refused because doing so was not consistent with its' "structure". The district court held that "a change of supervisor, is generally not considered 'reasonable' for purposes of an accommodation claim." (RE 62 at Page ID #764, citing *Deister v. Auto Club Ins. Ass'n.*, 647 Fed.App'x 652, 658 n. 2 (6th Cir. 2016)). The court erred.

First, while recognizing that a change of supervisor is "generally" not considered a reasonable accommodation, the court did not explain why it was not reasonable in this case. The Supreme Court has noted that whether

an employee's request is reasonable is fact-specific and should not be subject to a per se rule.  In *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002), the court addressed the question of reasonable accommodation in the context of a seniority system.  535 U.S. at 395-396. The court refused to adopt a blanket rule and instead, explained that in some situations, the ADA requires an employer to provide reasonable accommodations that depart from disability-neutral workplace rules. *Id*. at 397-398. According to the court, an employee may defeat an employer's motion for summary judgment by "show[ing] that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." 535 U.S. at 402. The court held that when a requested accommodation is not reasonable on its face, an employee may still prevail if he satisfies his "burden of showing special circumstances" by "explain[ing] why, in the particular case," the requested accommodation "can constitute a 'reasonable accommodation' [under the ADA] even though in the ordinary case it cannot." *Id*. at 406. If an employee can demonstrate that a requested accommodation is reasonable either on its face or in the circumstances of the case, the burden then shifts to the employer to "show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *Id*. at 402.

26

Consistent with *Barnett*, in *Cehrs* this court declined to adopt a per se rule that an employee's request for a leave of absence as an accommodation is unreasonable. According to the court, doing so would relieve the employer from ever having to demonstrate undue hardship. 155 F. 3d at 782. The court further noted that such an approach "eviscerates the individualized attention that the Supreme Court has deemed 'essential' in each disability claim.). See also *García-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 650 (1st Cir. 2000)(noting that "[t]hese are difficult, fact intensive, case-by-case analyses, ill-served by per se rules or stereotypes."). Although this case involves a change in supervision, the same rationale for rejecting a per se rule applies.

In *Kennedy v. Dresser Rand Co*., 193 F.3d 120, 123 (2nd Cir. 1999), the court addressed an employee's request for a different supervisor and held that "A per se rule stating that the replacement of a supervisor can never be a reasonable accommodation is therefore inconsistent with our ADA case law." The court stated that there is a presumption against changing supervisors, but as in all cases, "the plaintiff must demonstrate the reasonableness of the request in the context of the plaintiff's workplace." *Id*. Although *Kennedy* is not a Sixth Circuit decision, its' analysis and rationale are consistent with *Barnett* and *Cehrs.*

27

Plaintiff's request for a change in supervision was reasonable under the circumstances and in the context of his workplace. Plaintiff had a difficult interaction with Wiley which resulted in a flare up of his condition requiring treatment and medical leave. Wiley was Plaintiff's supervisor in name only. He and Plaintiff did not have daily or even frequent interaction. Plaintiff saw Wiley about twice a year at group meetings and rarely had any individual interaction with him. Wiley did not direct or oversee Plaintiff's customer service work in the field. Instead, Wiley had had to rely on feedback from others, including Bouza, to evaluate Plaintiff's performance. Except for the task of completing Plaintiff's evaluations, Bouza was effectively Plaintiff's supervisor. Very little needed to change. There was no need for coworkers to know about the accommodation, and no one would have suspected that anything out of the ordinary was happening. All outward appearances would have remained the same.

The district court held that Defendant was not "obliged to accommodate Tomlinson to by assigning a coworker to supervise him." (RE 62 at Page ID # 764; see also id. at Page ID # 750, "Bouza was Tomlinson's coworker, not his supervisor."). Although both reported to directly to Wiley, Bouza was clearly at a higher level than Plaintiff. Bouza gave Plaintiff his work assignments and acted as a supervisor to Plaintiff. When Plaintiff had

28

questions, he went to Bouza, not Wiley. Bouza was the point of contact for customers who raised questions about FSEs. Wiley looked to Bouza for input when he did evaluated Plaintiff. (RE 45 Wiley depo. at Page ID # 208, 216).

Second, the district court's reliance on *Deister* was misplaced. In *Deister,* there was no analysis of whether changing supervisors was a reasonable accommodation. In fact, there was no evidence that Deister even requested an accommodation. *Id*. at 657. Instead, in a footnote, the panel noted that the district court had cited *Burdett-Foster v. Blue Cross & Blue Shield of Michigan*, 574 Fed.App'x 672 (6th Cir. 2014) for the proposition that "an employer is not obliged to honor, as a 'reasonable accommodation,' an employee's request for assignment to a different supervisor." *Id*. at note 2. But the district court's opinion in *Deister* said nothing about changing supervisors as an accommodation. Rather, it cited *Burdette-Foster* only in the context of a transfer as an accommodation. See *Deister v. Auto Club Ins. Ass'n.,* 91 F. Supp 3d 905, 929 (E.D. Mich. 2015) citing *Burdette-Foster* at 680 ("Even if Burdett-Foster had requested a transfer to a new position (and she made clear in her deposition that she had not), such an accommodation is reasonable only if there is another position for which she would have been qualified.").

29

Nor does *Burdett-Foster* support the district court's decision in this case. As in *Deister*, the panel noted that Burdett-Foster did not make a request for accommodation other than to be able to make frequent trips to the bathroom. *Burdett-Foster*, 574 Fed.App'x at 680. Her other request that "potentially" amounted to an accommodation – to remain in the same department but report to a different supervisor – was denied due to her seniority, not because the request was per se unreasonable. *Id.*

Neither *Deister* nor *Burdett-Foster* support the district court's finding in this case. Neither employee requested a change in supervision as an accommodation, and neither court analyzed the issue. The cases did not establish a banket rule in this circuit that a change supervision is an unreasonable request for accommodation under the ADA. [4]

Defendant's own conduct has proven the reasonableness of Plaintiff's request. Although Defendant refused to even consider a change in supervision, as noted above, at the conclusion of the investigation of Plaintiff's complaint, Defendant changed course and had Bouza complete

---

[4] It appears that this court has yet to address the issue head on. As noted above, in *Deister* and *Burdett-Foster* the statements appear to be dicta. In *Tinsley v. Caterpillar Fin. Servs., Corp.*, 766 Fed.App'x 337, 342 (6th Cir. 2019), the plaintiff also requested a different supervisor as an accommodation, but the court did not reach the issue since it determined that Tinsley was not disabled.

the annual performance evaluations instead of Wiley. (Hemmerle depo. at 44; Doc. 43, Beene-Skuban depo. at 47-48, Page ID # 155-156; Doc. 44, Wiley depo. at 95, Page ID # 273; and RE 50-2, Wiley depo. Ex. 32, listing Bouza as the "Manager" at Page ID # 595). The district court never mentioned this important fact.

In sum, the district court's analysis of Plaintiff's request for a change of supervisor was inconsistent with the law and the intent of the ADA. The cases make it clear that claims under the ADA are fact-intensive and should not be subject to a per se rule. Instead, courts and the trier of fact need to review all of the facts and circumstances to determine whether the requested accommodation is reasonable. The starting point should be the recognition that under the ADA, accommodation may mean changing the way things are typically done. See 29 CFR 1630.2(o) and Pt. 1630, App. § 1630.2(o)(noting that accommodation may be any change in the work environment <u>or in the way things are customarily</u> done that enables an individual with a disability to enjoy equal employment opportunities.")(emphasis ours). Employers should not simply be allowed to say the request "does not fit our structure" and terminate the process without having to engage in further discussion, consider alternatives, or demonstrate undue hardship. The ADA's accommodation process requires more. Plaintiff was not looking for special

treatment or to work for a friend. He simply wanted to avoid a situation where his condition would be aggravated by another negative interaction with Wiley. It would seem that Defendant would have wanted the same and would have been more interested in finding ways to avoid further issues between Wiley and Plaintiff.

### 2. Defendant failed to engage in the interactive process regarding Plaintiff's request regarding a change in his supervision

The district court stated that "There is no reasonable inference to be drawn from the record evidence that KMC failed to engage in the interactive process with Tomlinson in good faith. *See Arndt v. Ford Motor Co.*, 716 Fed.App'x 519, 528 (6th Cir. 2017)." (RE 62 at Page ID # 764).  However, reasonable jurors viewing the evidence in a light most favorable to Plaintiff could reach a different conclusion.

First, Defendant immediately shut down any discussion about a change in supervision.  Defendant refused to engage in any conversation or give any consideration to how Plaintiff could be supervised differently. The concept was flatly rejected.  (Doc. 43, Beene-Skuban depo. at 36, Page ID # 144).  However, as demonstrated above, under the circumstances presented in this case, options were available. If Defendant insisted that Wiley still perform Plaintiff's evaluation, Defendant could have considered having

Bouza or Hemmerle instead of Wiley deliver the evaluation and go over the ratings and comments with Plaintiff. Wiley would have still done the appraisal, but the likelihood of another demeaning conversation like the one which aggravated Plaintiff's condition would have been minimized. Nor was there any consideration or discussion about even a temporary change in supervision that would have enabled Plaintiff to return to work.

Second, according to the EEOC, the ADA may require that supervisory methods be altered as a form of reasonable accommodation. (See EEOC Guidance on the ADA and Psychiatric Disabilities, RE 50-3 at Page ID # 623). Plaintiff's request regarding working with Bouza instead of Wiley could also be construed as opening the door to discussions about ways for Plaintiff and Wiley to interact using a different "supervisory method."

Accordingly, even if this Court determines that a change in supervisor was not reasonable in this case, the district court erred by allowing Defendant to completely sidestep any discussion and interactive process about how Plaintiff could be accommodated by exploring different ways for Wiley to supervise Plaintiff to lessen the likelihood of further negative interactions. For example, as stated above, Bouza or Hemmerle could have delivered the substance of Wiley's evaluations. Wiley could have been educated about how PTSD affected Plaintiff so that he understood what type

of comments or behavior would trigger a negative reaction. Another potential approach would be for Hemmerle or Jenny-Beene Skuban to be present on those rare occasions when Plaintiff and Wiley needed to speak. Defendant's conduct precluded consideration of any of these or other alternative supervisory methods.

In light of the above, jurors could find that Defendant failed to properly engage in the interactive process.

### 3.    There was no undue hardship

Since Plaintiff has shown that a change in supervision and/or supervisory methods was reasonable in this case, the burden shifts to Defendant to demonstrate that Plaintiff could not be accommodated because of "undue hardship." *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir.1997) and *Cehrs*, *supra*, 155 F.3d at 782 ("If an employer cannot show that an accommodation unduly burdens it, then there is no reason to deny the employee the accommodation.").  Ultimately, undue hardship is a question of fact for the jury to decide.  *Id*. at 783.

None of the options for accommodation available in this case would have created any undue hardship for Defendant. As noted, at around the time of Plaintiff's constructive discharge, Defendant changed its structure so that Aeric Bouza would do evaluations for all Injection Molding FSEs like

Plaintiff. If Defendant could do so for all FSEs, it easily could have done so for Plaintiff without undue hardship.

In addition, having a call with Plaintiff before he returned to work to try to make him feel comfortable about coming back would not have resulted in any hardship. Defendant planned on having a similar discussion in-person after Plaintiff returned. (Doc. 45-19, Page ID # 457). The only difference was the timing of the discussion. Plaintiff needed to hear what Defendant had to say before he came back to relieve some of his anxiety and to feel that he was returning to a healthy environment. In *Talley*, the court addressed a similar request and determined that an issue of fact precluded summary judgement when the employer "failed to engage in this process by not setting up a meeting as promised to discuss possible resolutions to the issue." 542 F.3d at 1109. The court further stated that at this meeting, "the parties might have further discussed and resolved what accommodations could allow Talley to return to work without presenting an undue hardship for the company. There is a genuine issue of material fact regarding who was responsible for the breakdown in the interactive process." *Id*. The same is true here.

In sum, jurors could find that none of the available accommodations in this case would have resulted in undue hardship to Defendant.

### 4.    Defendant's Conduct Resulted in Plaintiff's Constructive Discharge

As noted by the district court, a constructive discharge can satisfy the "adverse action" element of a prima facie case applicable to discrimination claims. (RE 62 at Page ID # 766, citing *Saroli v. Automation & Modular Components, Inc.*, 405 F.3d 446, 451 (6th Cir. 2005)). See also *Laster* v. *City of Kalamazoo*, 746 F.3d 714, 727-728 (6th Cir. 2014) *citing Koscis v. Multi-Care Mgmt. Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (employee may establish an adverse employment action by demonstrating that he was constructively discharged).

In the proceedings below, the parties and the district court incorrectly stated that the employer's intent was an element of a constructive discharge. (RE 46-1, Defendant's memorandum at Page ID # 478; RE 50 at Page ID # 559; and RE 62, Decision at Page ID # 766, 767). As summarized by the district court:

> "A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation." *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014)). To survive this motion for summary judgment, Tomlinson must show there are genuine disputes of material fact that (1) KMC deliberately created intolerable working conditions, as perceived by a reasonable person, (2) with the intention of forcing Tomlinson to resign. *See id.* (citing *Laster*, at 727-28)."

(RE 62 at Page ID # 766).

In *Green v. Brennan*, 578 U.S. 547 (2016), the Supreme Court explained that, if an employee establishes intolerability, "[w]e do not also require [the] employee to come forward with proof—proof that would often be difficult to allege plausibly—that not only was the discrimination so bad that he had to quit, but also that his quitting was his employer's plan all along." *Green*, 136 S. Ct. at 1779-80.  See also *Everly v. Everly*, 958 F.3d 442, 463 (6th Cir. 2020)(describing the two elements of a constructive discharge claim as follows: "(1) an employer must engage in such intolerable discriminatory conduct that a reasonable person would feel compelled to resign and (2) the employee must actually resign." ).

In *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020), the court acknowledged the decision in *Green*, but did not apply it because Tchankpa invited error in the district court. Although this appeal presents the same procedural posture, Appellant requests that this court apply *Green* rather than prior circuit precedent. *See Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 720-21 (6th Cir. 2016) (following Supreme Court precedent, not subsequent contrary circuit precedent, in similar circumstances, and collecting apposite decisions from other circuits).

In addressing the element of intolerability, the district court stated that "Between Wiley's negative review and KMC's evident willingness to investigate and rectify and discrimination in the company, nothing suggests any condition at KMC would be intolerable to a reasonable person." (RE 62 at Page ID # 767). However, the court viewed the facts in a light favorable to Defendant instead of Plaintiff. Reasonable jurors could conclude that Wiley's behavior and Defendant's failure to accommodate Plaintiff led to an intolerable situation.

Wiley issued an evaluation that was based on inaccurate information, and which appears to have been a review of Stuart Smith's performance instead of Plaintiff's. [5] When Plaintiff attempted to address the review, Wiley became defensive, hostile, and threatening. His tone went beyond what was necessary for a constructive conversation about Plaintiff's performance, and he attacked Plaintiff's competence. The fact that Wiley may not have sworn at Plaintiff or threatened his employment does not

---

[5] Even if not discriminatory, Wiley's evaluations appear to have been the product of convenience and haste rather than appropriate consideration of Plaintiff's performance. As noted above, Wiley gave Plaintiff an evaluation intended for Stuart Smith. The content of the two evaluations is   identical. (See RE 45-12 at Page ID # 426 and RE 50-1, Ex. 31 at Page ID # 593). When Hemmerle reviewed Wiley's evaluations on about February 22, 2018, Hemmerle pointed out at least six situations where Wiley used incorrect names of employees in completing the evaluations. (RE 50-5, Declaration of Counsel, Ex. 1 at Page ID # 634).  These facts demonstrate that Plaintiff had good cause to question Wiley's evaluation.

lessen the impact of his tone and words on Plaintiff, whose condition makes him sensitive to aggressive behavior. (RE 62 at Page ID # 747).  A person without PTSD may have been able to handle it; Plaintiff could not.

In addition, Defendant never told Plaintiff that it was considering having Bouza do his evaluations. Instead, the message was absolute that if Plaintiff returned to work, he would have to report to Wiley. For Plaintiff this was intolerable. He had legitimate concerns about any interactions with Wiley that could result in another serious aggravation of his PTSD symptoms.

In short, Plaintiff made a request for an accommodation that Defendant refused without and further discussion and without proposing any alternatives that would have allowed Plaintiff to return to work. In *Talley*, this court held that "when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered, a jury may conclude that the employee's resignation was both intended and foreseeable." 542 F.3d at 1109. The same result should follow here.

Similarly, in *Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004), the court held that the plaintiff raised a jury question regarding her constructive discharge. The court noted that reasonable jurors could infer that the

repeated failure to accommodate Smith's request would cause her working conditions to become intolerable for a person suffering from her disability. According to the court, "a reasonable jury could conclude that the USPS knowingly and deliberately 'turned its back' on Smith, and therefore, the USPS could foresee that Smith would be compelled to quit her job in order to preserve her health." 376 F.3d at 537-38.  Plaintiff's decision was just as reasonable.  His requests for accommodation were denied and he needed to leave for his physical and mental well-being.  (Doc. 45-19, Page ID # 458).

The district court held that because Plaintiff did not make a request for a reasonable accommodation, the failure to accommodate cannot be considered a contributing factor to the alleged constructive discharge.  (RE 62 at Page ID # 764). However, as demonstrated above, Plaintiff's request for a change in supervision was reasonable. Jurors could conclude that Plaintiff reasonably believed that the situation was intolerable, particularly given Defendant's refusal to consider alternatives that would not have caused any undue hardship, but which would have allowed Plaintiff to return to work.

C.    **The District Court Erred in Granting Summary
       Judgment on Plaintiff's Retaliation Claim**

The district court agreed that Plaintiff engaged in protected conduct by notifying Defendant about his disability and seeking an accommodation. (RE 62 at Page ID # 7650. However, the court held that Plaintiff's retaliation claim failed because "no one at KMC took adverse employment action against Tomlinson." (RE 62 at Page ID # 765).

The court's conclusion that there was no adverse action is premised on its findings that Plaintiff's request for accommodation was unreasonable and that he was not constructively discharged. However, as set forth above, reasonable jurors could find that Plaintiff's requested accommodation was reasonable, that Defendant failed to accommodate him, and that the failure to do so resulted in Plaintiff's constructive discharge. Both the failure to accommodate and constructive discharge are adverse actions. Accordingly, the district court's conclusion is in error and should be reversed.

### III.    CONCLUSION

Defendant's motion for summary judgment should have been denied with respect to Plaintiff's failure to accommodate, constructive discharge, and retaliation claims. There were factual disputes regarding the above claims that should have been presented to a jury.

Plaintiff respectfully requests that the decision of the district court be reversed and that this matter be remanded for trial.

Respectfully submitted,

s/ David Torchia
David Torchia (0015962)
Tobias, Torchia & Simon
302 Mercantile Center
120 E. Fourth Street
Cincinnati, OH  45202
(513) 241-8137
davet@tklaw.com
Attorney for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C), Counsel for Appellant certifies that Appellant's brief contains 9,336186 words between pages 1 and 42.

s/ David Torchia
David Torchia

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document was filed electronically on April 11, 2022 and will be served upon all counsel of record via the court's ECF system.

s/ David Torchia
David Torchia

**Case No. 21-6245**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**CURT TOMLINSON
Plaintiff-Appellant**

**vs.**

**KRAUSS-MAFFEI, CORPORATION
Defendant-Appellee**

---

**APPELLANT'S DESIGNATION OF RECORD CONTENTS**

---

**RECORD**

| Description of Entry | Date | Record Entry No. | Page ID Range |
|---|---|---|---|
| Complaint | 5/31/2019 | 1 | #1-5 |
| Deposition of Jenny Beene-Skuban | 5/27/21 | 43 | #108-169 |
| Deposition of John Wiley | 5/27/21 | 44 | #179-278 |
| Deposition of Curt Tomlinson | 5/27/21 | 45 | #294-351 |
| Ex. 3 | 5/27/21 | 45-3 | #393- 406 |
| Ex. 7 | 5/27/21 | 45-7 | #412-413 |

| | | | |
|---|---|---|---|
| Ex. 9 | 5/27/21 | 45-9 | #419-423 |
| Ex. 11 | 5/27/21 | 45-11 | #424 |
| Ex. 12 | 5/27/21 | 45-12 | #425-428 |
| Ex.13 | 5/27/21 | 45-13 | #429-430 |
| Ex. 14 | 5/27/21 | 45-14 | #431-443 |
| Ex. 15 | 5/27/21 | 45-15 | #444-446 |
| Ex. 16 | 5/27/21 | 45-16 | #447-448 |
| Ex. 17 | 5/27/21 | 45-17 | #449-450 |
| Ex. 18 | 5/27/21 | 45-18 | # 451-455 |
| Ex. 19 | 5/27/21 | 45-19 | # 456-458 |
| Defendant's memo in support of motion for summary judgment | 6/1/21 | 46-1 | #460-485 |
| Ex. 27 | 6/1/21 | 46-2 | #486 |
| Plaintiff's response in opposition to Defendant's motion for summary judgment | 6/30/21 | 50 | #534-561 |
| App. A | 6/30/21 | 50-1 | #562-573 |
| App. B | 6/30/21 | 50-2 | #574-616 |
| App. C | 6/30/21 | 50-3 | #617-624 |
| App. D | 6/30/21 | 50-4 | #625-630 |
| App. E | 6/30/21 | 50-5 | #631-635 |

| | | | |
|---|---|---|---|
| Deposition of Ryan Kremis | 7/2/21 | 51 | #636-680 |
| Deposition of Randy Hemmerle | 7/2/21 | 52 | #681-711 |
| Order Granting Motion for Summary Judgment | 12/8/21 | 62 | #744-769 |
| Judgment | 12/8/22 | 28 | #770 |
| Notice of Appeal | 12/29/22 | 29 | # 772 |