**CASE NO. 21-6245**

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**Curt Tomlinson,**

*Plaintiff-Appellant,*

**v.**

**Krauss-Maffei Corporation,**

*Defendant-Appellee.*

———————————

## BRIEF OF APPELLEE KRAUSS-MAFFEI CORPORATION
———————————

**On Appeal from the United States District Court**
**for the Eastern District of Kentucky, Northern Division**
**Case No. 2:19-cv-00069**

———————————

**Michael W. Hawkins**
**Michael B. Mattingly**
DINSMORE & SHOHL, LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Phone: (513) 977-8200
Fax: (513) 977-8141
Email:
michael.hawkins@dinsmore.com
michael.mattingly@dismore.com
*Attorneys for Defendant-Appellee*

David Torchia
TOBIAS, TORCHIA, & SIMON
302 Mercantile Center
120 E. Fourth Street
Cincinnati, Ohio 45202
Phone: (513) 241-8137
Fax: ((513) 241-7863
Email: davet@tktlaw.com
*Attorney for Plaintiff-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
## CASE NO. 21-6245

Curt Tomlinson                                               Plaintiff-Appellant,

v.

Krauss-Maffei Corporation                                   Defendant-Appellee.

\* \* \* \* \* \* \*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to 6th Cir. R. 25, Krauss-Maffei Corporation makes the following disclosures:

1.      Is said party a subsidiary or affiliate of a publicly owned corporation?

        **Answer: Krauss-Maffei Corporation is a wholly owned subsidiary of KraussMaffei Company Limited. KraussMaffei Company Limited is publically traded on the Shanghai Stock Exchange under the symbol ("KMCL").**

2.      Is there a publicly-owned corporation, not a party to the appeal that has a financial interest in the outcome?

        **Answer: KraussMaffei Company Limited is publically traded on the Shanghai Stock Exchange under the symbol ("KMCL"). KraussMaffei Company Limited may indirectly have a financial interest in this matter by virtue of its relationship to Krauss-Maffei Corporation.**


/s/ *Michael B. Mattingly*              May 25, 2022
(Signature of Counsel)                  (Date)

i

# **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT ........................................................i

TABLE OF CONTENTS............................................................. ii

TABLE OF AUTHORITIES ................................................................v

STATEMENT REGARDING ORAL ARGUMENT ........................................ vii

STATEMENT OF JURISDICTION.......................................................1

STATEMENT OF THE ISSUES................................................................2

STATEMENT OF THE CASE.................................................................3

    I.      NATURE OF THE CASE AND PROCEDURAL HISTORY.............3

    II.     STATEMENT OF FACTS....................................................5

          A.    Krauss-Maffei Corporation Generally ........................................5

          B.    Appellant's Application for Employment at KMC ...................6

          C.    Appellant's 2016-2017 Performance at KMC ...........................7

          D.    Appellant's 2017-2018 Performance at KMC ...........................9

          E.    Appellant's Reaction to the 2017 Performance Review..........11

          F.    Appellant Takes Medical Leave ................................................15

          G.    Appellant's Sole Accommodation Request ..............................19

          H.    Appellant Seeks and Accepts Alternative Employment in the Midst of Discussions Regarding His Sole Accommodation Request and the Investigation of His Allegations....................21

          I.    KMC's Formal Investigation of Appellant's Allegations ........22

          J.    Appellant Voluntarily Resigns from KMC...............................25

K.    KMC Delegates Evaluation Drafting Duties to Service Coordinators ...............................................................26

SUMMARY OF THE ARGUMENT ...................................................27

III.    ARGUMENT .............................................................................28

A.    Legal Standard ..............................................................28

i.    Summary Judgment Standard .......................................28

ii.    Failure to Accommodate .................................................29

iii.    Retaliation ........................................................................31

iv.    Constructive Discharge ....................................................31

B.    Appellant Did Not Appeal the District Court's Decision Regarding His Disability Discrimination Claim ......................32

C.    The District Court Properly Granted Summary Judgment to KMC on Appellant's Failure to Accommodate Claim .............33

i.    Appellant Never Requested a Reasonable Accommodation ..............................................................34

ii.    KMC Properly Engaged in the Interactive Process, While Appellant Was Responsible for Its Breakdown ...39

iii.    KMC Is Not Required to Demonstrate Undue Hardship as Appellant Suggests ......................................................42

D.    The District Court Properly Granted Summary Judgment on Appellant's Retaliation Claim ....................................................43

i.    Appellant Did Not Suffer an Adverse Employment Action ..........................................................................43

ii.    Appellant Did Not React to KMC's Actions as a Reasonable Person Would ...............................................44

iii.    There is No Evidence That KMC Deliberately Created an
Intolerable Work Environment for Appellant ................45

iv.    Absent an Adverse Employment Action, Appellant's
Retaliation Claim is Indistinguishable from His Failure to
Accommodate Claim ......................................................50

CONCLUSION ........................................................................51

CERTIFICATE OF SERVICE ................................................52

CERTIFICATE OF COMPLIANCE.........................................53

ADDENDUM ...........................................................................54

APPELLEE'S DESIGNATION OF RECORD DOCUMENTS............................55

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Agnew v. BASF Corp.*, 286 F.3d 307 (6th Cir. 2002) ...............................32

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................29

*Arndt v. Ford Motor Co.*, 716 F. App'x 519 (6th Cir. 2017) ..............42, 46, 49, 50

*Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir. 2000) ........................40

*Brister v. Mich. Bell Tel. Co.*, 705 F. App'x 356 (6th Cir. 2017) ..........................46

*Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672
(6th Cir. 2014) ...............................................................36

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).......................................29

*Curtis v. Hanger Prosthetics & Orthotics, Inc.*, 2002 U.S. Dist. LEXIS 11371
(W.D. Ky. Jun. 25, 2002) .......................................................46

*Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652 (6th Cir. 2016) ................35, 36

*Gearhart v. E.I. DuPont de Nemours & Co.*, 833 F. App'x 416 (6th Cir. 2020) ...43

*Goodman v. J.P. Morgan Inv. Mgmt.*, 954 F.3d 852 (6th Cir. 2020)......................29

*Green v. Brennan*, 578 U.S. 547 (2016) ...........................................48, 49

*Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626 (6th Cir. 2018) ...................32, 45

*Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719 (6th Cir. 2000) ...........38

*Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195 (6th Cir. 2010) ...........................40

*Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682
(E.D. Ky. Jun. 21, 2018) .........................................................30

*Kennedy v. Dresser Rand Co.*, 193 F.3d 120 (2d Cir. 1999) .................................37

*Keogh v. Concentra Health Servs.*, 752 F. App'x 316 (6th Cir. 2018) ............31, 44

*Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862 (6th Cir. 2007) ...........................31, 40

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..............29

*Moore v. Mason Cty.*, 2018 U.S. Dist. LEXIS 149752
(E.D. Ky. Sep. 4, 2018) ....................................................................................30, 33

*Neloms v. Charleston Cty. Sch. Dist.*, 2019 U.S. Dist. LEXIS 157732
(D. S.C. Jun. 19, 2019) ...........................................................................................42

*Savage v. Gee*, 665 F.3d 732 (6th Cir. 2012) ..........................................................32

*Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004) .................................................49

*Spagnuolo v. Auto Club Grp. Ins. Co.*, 2020 U.S. Dist. LEXIS 129176
(E.D. Mich. Jul 22, 2020) .......................................................................................36

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008) ........51

*Tartt v. City of Clarksville*, 149 F. App'x 456 (6th Cir. 2005) ...............................33

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805 (6th Cir. 2020) ....................45

*Williams v. Lincoln Fin. Grp.*, 2018 U.S. Dist. LEXIS 122349
(N.D. Ind. Jul. 23, 2018) .........................................................................................42

## **STATUTES**

42 U.S.C. § 12101 *et seq.*......................................................................29, 30, 33, 42

KY. REV. STAT. § 344.010 *et seq.* ...........................................................................29

29 C.F.R. § 1630.2(o)(3) ..........................................................................................31

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument on the issues presented in his appeal, claiming that the Court would benefit by a supplementing its understanding of the facts presented in this case. Appellee disagrees that oral argument is necessary given the thorough and well-reasoned, twenty-six (26) page opinion of the District Court granting summary judgment for multiple reasons, following extensive briefing and oral arguments. Regardless, Appellee is willing to engage in oral argument if the Court deems further arguments appropriate.

## STATEMENT OF JURISDICTION

Appellee agrees that the District Court had jurisdiction per 28 U.S.C. § 1331 and this Court maintains jurisdiction per 28 U.S.C. § 1291. Appellee agrees that Appellant's Notice of Appeal was timely.

## <u>STATEMENT OF THE ISSUES</u>

A.    Whether the District Court correctly entered summary judgment in favor of Appellee, with respect to Appellant's failure to accommodate claim.

B.    Whether the District Court correctly entered summary judgment in favor of Appellee, with respect to Appellant's retaliation claim.

C.    Whether the District Court correctly held that Appellant was not constructively discharged as a matter of law.

## STATEMENT OF THE CASE

## I.    NATURE OF THE CASE AND PROCEDURAL HISTORY

Defendant/Appellee Krauss-Maffei Corporation ("KMC") provides the following statement of the case as background to the dispute.

KMC is a worldwide manufacturer of machinery and systems for the production and processing of plastics and rubber. This lawsuit stems from the employment of Plaintiff/Appellant Curt Tomlinson ("Appellant"), who worked for KMC between May 2016 and his abrupt resignation on August 24, 2018. (Curt Tomlinson Deposition Transcript (hereinafter "Tomlinson Dep."), R. 45, Page ID#: 298, 315).

Prior to his resignation, Appellant received a "Does Not Meet Requirements" performance review from his supervisor that allegedly triggered Appellant's PTSD. The performance review was unaccompanied by any adverse employment action. *See infra,* Section II. Appellant alleges the review was discriminatory, despite his supervisor being unaware of his PTSD at the time. *Id*. Because of his condition, Appellant informed KMC that he needed to take a medical leave of absence, which KMC granted. *Id.*  During his leave of absence, Appellant sought and secured alternate employment, even though KMC repeatedly informed Appellant it desired his return to work when he was medically cleared to

do so. *Id.* Rather than return, Appellant resigned from KMC and started a higher paying job, before the expiration of his approved medical leave. *Id.*

Following his resignation, Appellant filed a Complaint against KMC in the Eastern District of Kentucky on May 31, 2019. (Compl., R. 1, Page ID#: 1–5). Appellant's Complaint advanced three causes of action: (1) that KMC discriminated against Appellant in violation of the Americans with Disabilities Act ("ADA") and the Kentucky Civil Rights Act ("KCRA"); (2) that KMC failed to provide a reasonable accommodation for his disability in violation of the ADA and KCRA; and (3) that KMC retaliated against him in violation of the ADA and KCRA. (*Id.*). Embedded in Appellant's discrimination and retaliation claims is an argument that his resignation constituted a constructive discharge. (*Id.*).

Following discovery, on June 1, 2021, KMC filed a motion for summary judgment on all claims. (Mot. Summ. J., R. 46). Following oral arguments, the District Court granted KMC's motion in its entirety via a twenty-six (26) page opinion on November 12, 2021. (Ord. Granting Summ. J., R. 62). Notably, the District Court did not find that this case presented a close call. Rather, the record evidence and supporting judicial precedent irrefutably demonstrated there were numerous reasons why summary judgment was appropriate as a matter of law: (1) KMC did not discriminate or retaliate against Appellant based on his disability; (2) KMC satisfied its obligation to reasonably accommodate Appellant's disability,

including engaging in an interactive process with Appellant; and (3) Appellant's resignation did not constitute a constructive discharge. (*Id.*).

Appellant timely appealed the District Court's Order granting summary judgment on December 29, 2021. (Notice of Appeal, R. 65, at Page ID#: 772). Appellant appeals his failure to accommodate and retaliation claims, as well as the District Court's holding that he was not constructively discharged. Appellant did not appeal the District Court's dismissal of his disability discrimination claim.

The District Court's decision granting summary judgment to KMC on all claims was correctly decided in light of the law, the record evidence, administrative guidance, and this Circuit's precedent. Accordingly, for all the reasons explained below, the Court should affirm the District Court's grant of summary judgment to KMC in its entirety.

## II.     STATEMENT OF FACTS

### A.     Krauss-Maffei Corporation Generally

Krauss-Maffei Corp. is the U.S. based organization of Krauss-Maffei Group, a leading global manufacturer of machinery and systems for the production and processing of plastics and rubber. KMC services all aspects of injection molding machinery, extrusion technology, and reaction process machinery. The Company services customers across many sectors including the automotive, packaging, medical, and construction industries, as well as manufacturers of electrical and

electronic products and household appliances. KMC maintains a facility at 7095 Industrial Rd., Florence, KY 41042. (https://www.kraussmaffei.com/en/about-kraussmaffei, last visited May 4, 2022).

### B.    Appellant's Application for Employment at KMC

Appellant applied for a Field Service Engineer ("FSE") position in KMC's Injection Molding Machines ("IMM") division in May 2016. (Tomlinson Dep., R. 45, Page ID#: 298). On May 13, 2016, KMC offered Appellant a full-time position as a FSE on an "at will" basis. (Ex. 4 to Tomlinson Dep., R. 45-4, Page ID#: 407–408; Tomlinson Dep., R. 45, Page ID#: 314). Per his offer letter, Appellant would report to KMC's sole IMM Service Manager, John Wiley ("Wiley"). (Tomlinson Dep., R. 45, Page ID#: 313). During the entirety of Appellant's employment, all IMM FSEs, including Appellant, reported directly to Wiley. (Tomlinson Dep., R. 45, Page ID#: 316).

After accepting the FSE position on June 6, 2016, KMC requested that Appellant complete a "Master Sheet," as part of the hiring process. Therein, KMC asked whether it needed to consider any reasonable accommodations, to which Appellant responded, "No." (Ex. 5 to Tomlinson Dep., R. 45-5, Page ID#: 313; Tomlinson Dep., R. 45, Page ID#: 409).

As an IMM FSE, Appellant was responsible for installing, servicing, and performing maintenance on the electrical, mechanical, and hydraulic systems for

injection molding systems operated by KMC's clients. (Tomlinson Dep., R. 45, Page ID#: 315). Appellant was regularly dispatched to clients' production sites for the purpose of troubleshooting and fixing inoperable systems. (*Id.*). Appellant's job was service-based, and thus, client satisfaction was a substantial component of his job. (*Id.* at Page ID#: 315–316). KMC charged clients several hundred dollars per hour for Appellant's services. (Tomlinson Dep., R. 45, Page ID#: 316; John Wiley Deposition Transcript (hereinafter "Wiley Dep."), R. 44, Page ID#: 207).

### C.    Appellant's 2016-2017 Performance at KMC

In September 2016, three (3) months into his employment with KMC, two co-workers accused Appellant of making inappropriate comments about underage girls (Tomlinson Dep., R. 45, Page ID#: 317). As a result of this report, Wiley and KMC's Director of Human Resources Randy Hemmerle ("Hemmerle") called Appellant to review the allegations. (Ex. 6 to Tomlinson Dep., R. 45-6, Page ID#: 410–411). Specifically, Hemmerle explained that, "It was brought up to us that you say you like to have sex with young girls." (Tomlinson Dep., R. 45, Page ID#: 317). Appellant denied making the statements, to which Wiley responded, "Yeah, I figured somebody got something mistaken. Just go ahead and go on back to work." (Tomlinson Dep., R. 45, Page ID#: 318). KMC did not take any adverse actions against Appellant as a result of the accusations and did not include any reference to the incident in the review covering Appellant's 2016 performance. (*Id.*).

On February 17, 2017, Appellant sent Hemmerle an email alleging that he had experienced "harassment" from another hourly FSE, Mark Bigos ("Bigos"), six (6) months earlier. (Ex. 7 to Tomlinson Dep., R. 45-7, Page ID#: 412; Tomlinson Dep., R. 45, Page ID#: 319). Bigos allegedly told co-workers that Appellant destroyed a $40,000 pump while servicing equipment at Bolta US ("Bolta"), a KMC customer in Alabama. (Tomlinson Dep., R. 45, Page ID#: 319, 321). In explaining why Bigos should not be allowed to harass him, Appellant vaguely informed Hemmerle as follows: "I have PTSD and it's something I don't like to mention to people because of how they treat me differently . . . ." (Ex. 7 to Tomlinson Dep., R. 45-7, Page ID#: 412). Despite the information, Appellant did not request an accommodation from Hemmerle related to his PTSD. (Tomlinson Dep., R. 45, Page ID#: 320). Instead, Appellant merely requested not to work with Bigos again. Following his complaint, KMC never assigned Bigos to work with Appellant again. (Tomlinson Dep., R. 45, Page ID#: 320).

Wiley was not included on Appellant's February 17, 2017 email or informed that Appellant allegedly suffered from PTSD. (Ex. 7 to Tomlinson Dep., R. 45-7, Page ID#: 412; Tomlinson Dep., R. 45, Page ID#: 322, 331, 340; Wiley Dep., R. 44, Page ID#: 205, 250). Indeed, besides Hemmerle, Appellant did not disclose that he suffered from PTSD to any KMC manager until over a year later on March 22, 2018, after receiving a performance review covering his 2017 performance

("2017 Review"). (Tomlinson Dep., R. 45, Page ID#: 344–345; Ex. 13 to Tomlinson Dep., R. 45-13, Page ID#: 429).

Shortly after Appellant's complaint regarding Bigos in February 2017, Wiley delivered Appellant a 2016 performance review in March 2017 ("2016 Review"), per KMC's regular practice. (Ex. 9 to Tomlinson Dep., R. 45-9, Page ID#: 420–421). The review rated Appellant as "Meets Requirements." (*Id.*). However, the review noted that Appellant needed to improve his innovative thinking and customer service skills, particularly as they related to product knowledge and communication. (*Id.*).

### D.    Appellant's 2017-2018 Performance at KMC

Between July 21, 2017 and February 28, 2018, at least three of KMC's customers complained about services rendered by Appellant. On July 31, 2017, KMC's Client Service Manager Stefan Betzing emailed Wiley, explaining that he received a complaint from a manager at Bolta regarding Appellant's performance during a service call. (Ex. 10 to Tomlinson Dep., R. 45-10, Page ID#: 422–423). Bolta complained that Appellant did not appear have the necessary experience to service its equipment, and was not happy with Appellant's service. (*Id.*). As a result, Wiley agreed not to assign Appellant to Bolta in the future. (*Id.*).

Later in 2017, International Auto Components Group ("IAC"), a KMC client in Tennessee, complained about Appellant's performance. (Wiley Dep., R. 44,

9

Page ID#: 221–222). Specifically, IAC complained that Appellant took an excessively long time to troubleshoot its equipment and that another KMC technician had to repeat the service not long after Appellant's service. (*Id.*).

On February 28, 2018, shortly after Appellant serviced equipment at Berry Global, Inc. ("Berry") in Hot Springs, Arkansas, KMC Service Coordinator Aeric Bouza ("Bouza") received an email from Berry Maintenance Manager Chuck Overton ("Overton") requesting that KMC not send Appellant to its facility in the future. (Ex. 11 to Tomlinson Dep., R. 45-11, Page ID#: 424; Wiley Dep., R. 44, Page ID#: 218). In a separate communication, Overton also contacted Wiley and requested a discount on Berry's invoice due to Appellant's poor work. (Wiley Dep., R. 44, Page ID#: 240).

Three weeks after the Berry complaint, on March 14, 2018, Wiley delivered Appellant's 2017 Review via email (as was customary because Wiley worked in Kentucky and Tomlinson lived in Florida and worked throughout the U.S. Southeast). (Ex. 12 to Tomlinson Dep., R. 45-12, Page ID#: 425–427).[1] In the

---

[1] Appellant's Brief attempts to make an issue of the timing of the Berry complaint, inferring that it was improperly considered during the 2017 Review. However, the 2017 Review was drafted and approved before the Berry complaint occurred. (Wiley Dep., R. 44, Page ID#: 208–209). Notably, the Berry complaint is not referenced in the 2017 Review. (Ex. 12 to Tomlinson Dep., R. 45-12; Page ID#: 426–427). Wiley only mentioned the Berry complaint when Appellant specifically asked which customers had complained about his work during a follow-up call with Appellant in March 2018 to discuss the 2017 Review. (Wiley Dep., R. 44, Page ID#: 237).

email, Wiley explained, "[t]here are many areas that I feel you are having problems wi[th]. I think we have offered a good deal of training and shadowing with other FSE[s]. This has not produced the desired results and we need your help in moving forward." (*Id.* at Page ID#: 425). Despite his evaluation of Appellant's performance, Wiley granted Appellant a pay increase effective January 1, 2018. (*Id.*).

In the 2017 Review, Wiley rated Appellant's performance as "Does Not Meet Requirement" in four "Core Competencies": (1) Results Oriented; (2) Flexibility/Adaptability; (3) Develops Technical Knowledge; and (4) Time Management. (*Id.* at Page ID#: 426–427). In the other seven Core Competencies, Wiley rated Appellant as "Meets Requirement." (*Id.*). Appellant's overall rating was "Does Not Meet Requirements," accompanied by an explanation that "[t]he front line FSE may not be his specialty, will need to discuss an action plan." (*Id.*). Despite the overall rating and the note to discuss an action plan, the 2017 Review did not result in any adverse employment action, such as a demotion or a performance improvement plan. (Tomlinson Dep., R. 45, Page ID#: 330, 347).

### E.    Appellant's Reaction to the 2017 Performance Review

After receiving the 2017 Review, Appellant became "very upset" and called Hemmerle to discuss its content. (Tomlinson Dep., R. 45, Page ID#: 330, 331).

Hemmerle recommended that Appellant call Wiley, his supervisor, directly to discuss the 2017 Review. (*Id.* at Page ID#: 331).

Appellant took Hemmerle's advice and called Wiley sometime between March 15th and 22nd, 2018. (Ex. 13 to Tomlinson Dep., R. 45-13, Page ID#: 429). Appellant asked to know how Wiley developed his review, and Wiley responded that it was based on feedback from KMC employees and customers. (Wiley Dep., R. 44, Page ID#: 237–238). Appellant then demanded to know which customers had complained about him, and Wiley responded that Bolta, IAC, and Berry had complained. (Tomlinson Dep., R. 45, Page ID#: 331; Wiley Dep., R. 44, Page ID#: 237). Appellant then explained that he did not think the review was fair and that he did not believe that customers had complained about his service. (Tomlinson Dep., R. 45, Page ID#: 325). Wiley responded that he did not want to argue and they would have to "agree to disagree." (Tomlinson Dep., R. 45, Page ID#: 331; Wiley Dep., R. 44, Page ID#: 237).

Although Appellant's Brief, in exaggerated fashion, describes Wiley as "belligerent," "threatening," "aggressive," Appellant testified that Wiley did not use profanity and did not threaten any adverse actions during the call:

> Q.    John [Wiley] didn't use any profanity on that call, did he?
>
> A.    No.

Q.    No. He didn't threaten your employment?

A.    No.

(Appellant's Brief, Doc. 27, p. 17; Tomlinson Dep., R. 45, Page ID#: 331). Wiley also testified that his interactions with Appellant were always "professional" and "respectful," and that there was "never . . . any hostility or anger or any negative comments." (Wiley Dep., R. 44, Page ID#: 259). Such testimony reflects the language Wiley used in the 2017 Review, in which he complimented Appellant's effort and called him "respectful" and a "gentleman." (Ex. 12 to Tomlinson Dep., R. 45-12, Page ID#:426–427).

When asked directly what specific comments Wiley made that Appellant believed were an "attack towards [his] PTSD," Appellant testified that he could not remember any specifically:

Q.    Okay. And what were the specific comments that were a threat -- or, correction, were an attack toward your PTSD?

A.    I just felt that just the kind of comments he was making about my performance or I haven't -- I haven't even shown an improvement since day one. Just -- just -- I mean, honest to God, I mean, I can't remember verbatim.

(Tomlinson Dep., R. 45, Page ID#: 331). Appellant also admitted that he is prone to misinterpreting other people's comments and statements due to his PTSD medications. (*Id.* at Page ID#: 333).

Regardless of the content of their conversation or the review, it is undisputed that Wiley was not aware of Appellant's PTSD at the time of the 2017 Review or during the follow-up phone conversation. (Wiley Dep., R. 44, Page ID#: 250; Tomlinson Dep., R. 45, Page ID#: 331). Specifically, Appellant confirmed he had no idea when Wiley was made aware of his PTSD, and Wiley testified that he did not become aware of the PTSD until July or August 2018, four (4) to five (5) months after issuing the 2017 Review. (Tomlinson Dep., R. 45, Page ID#: 322, 331, 340; Wiley Dep., R. 44, Page ID#: 250).

The post-review phone call between March 15th and 22nd, 2018 was the last time Appellant spoke with Wiley prior to his abrupt resignation for a higher-paying job at Avure Technologies, Inc. ("Avure") (Wiley Dep., R. 44, Page ID#: 239; Tomlinson Dep., R. 45, Page ID#: 309).

Shortly after his phone call with Wiley, Appellant complained about the 2017 Review to KMC's General Counsel Jenny Beene-Skuban ("Beene-Skuban"). In an email dated March 22, 2018, Appellant vaguely wrote, "I got a review from John Wiley that I feel in his comments is threatening, harassing and is an attack on my PTSD." (Ex. 13 to Tomlinson Dep., R. 45-13, Page ID#: 429). Beene-Skuban requested to know specifically what Wiley wrote or said that made Appellant feel that way. (*Id.*). Appellant did not substantively respond to Beene-Skuban. (*Id.* at Page ID#: 429).

14

A few weeks later, on April 4, 2018, Appellant called and emailed KMC Contract Administrator Kyla Beach and restated his complaints about John Wiley. (*Id.* at Page ID#: 430; Tomlinson Dep., R. 45, Page ID#: 332–333). Because Beach was not responsible for compliance issues, she forwarded Appellant's email to Beene-Skuban. After receiving Appellant's email, Beene-Skuban again offered to discuss Appellant's concerns and allow him to provide more details. (Ex. 13 to Tomlinson Dep., R. 45-13, Page ID#: 430). Appellant did not respond to Beene-Skuban's April 4, 2018 email. (Tomlinson Dep., R. 45, Page ID#: 338).

### F.    Appellant Takes Medical Leave

Two weeks after receiving the 2017 Review, Appellant requested, and KMC authorized Appellant, to take a medical leave of absence beginning on or around March 26, 2018. (Tomlinson Dep., R. 45, Page ID#: 333, Wiley Dep., R. 44, Page ID#: 239). Appellant was compensated during the entirety of his leave by KMC's short-term disability ("STD") benefits. (Tomlinson Dep., R. 45, Page ID#: 310). Appellant formally requested FMLA leave through Hemmerle on May 11, 2018 for anxiety and depression allegedly stemming from his PTSD. (Ex. 14 to Tomlinson Dep., R. 45-14, Page ID#: 431–443). In his FMLA paperwork, Appellant's physician was asked: "Is patient able to work *with job modifications or restrictions*?" to which the physician responded "No." (*Id.* at Page ID#: 434) (emphasis added). Appellant testified that he agreed with this assessment:

> Q.    And what I am getting at is specifically the doctor is saying that you are not able to work with a job restriction, correct?
>
> A.    I'm just saying -- you are going to have to interpret it the way you do. I'm saying the way I interpret it, I can't work . . . .

(Tomlinson Dep., R. 45, Page ID#: 336). A series of subsequent notes from Appellant's health care providers indicated that Appellant could not return to work until September 6, 2018 at the earliest. (Ex. 14 to Tomlinson Dep., R. 45-14, Page ID#: 439–443).

On May 18, 2018, Appellant emailed KMC President Paul Caprio ("Caprio") to complain about Wiley. (Ex. 2 to Mot. Summ. J., R. 46-2, Page ID#: 486). Appellant explained that he did not believe that KMC was taking his allegations about Wiley seriously. (*Id.*). Despite his protestations, Appellant informed Caprio that he had "not asked for any special conditions," for his PTSD and only requested that "someone . . . take this serious and have a talk with me so this can be discussed in more details." (*Id.*). Appellant confirmed that as of May 18, 2018, he had not requested any specific accommodation related to his alleged PTSD. (Tomlinson Dep., R. 45, Page ID#: 345).

Caprio forwarded Appellant's May 18, 2018 email to Hemmerle, who then called Appellant to discuss the matter. (Ex. 15 to Tomlinson Dep., R. 45-15, Page ID#: 444–446). Because Appellant did not answer Hemmerle's call, Hemmerle left

Appellant a voice message and followed up via email. (*Id.*). Hemmerle's email stated, "I just left you a voicemail. I would like to arrange a call with you today together with Jenny Beene-Skuban to address your concerns. Please let me know your availability." (*Id.*).

Appellant responded to Hemmerle via email three (3) days later on May 21, 2018, saying, "I am sorry I missed your call[.] If you can give me some notice in advance so I know." (*Id.*). Later that day, Hemmerle responded, "Thanks for the reply Curt. Jenny and I are free anytime tomorrow, morning or afternoon. Please offer up 30 minutes that are good for you and we will accommodate." (*Id.*). Appellant did not respond for another two (2) weeks. (Tomlinson Dep., R. 45, Page ID#: 338).

Because Appellant did not respond for a couple of weeks, Hemmerle again emailed Appellant on June 1, 2018, writing, "I haven't heard back from you, but wanted to see if you are available for a short call today at 3:30 PM with Jenny and I. I will plan on calling you nonetheless, but if this does not work for you please let me know." (Ex. 15 to Tomlinson Dep., R. 45-15, Page ID#: 444–446).

Appellant finally responded via email on June 20, 2018—over a month after Hemmerle first contacted him. Here again, Appellant repeated his vague complaint about Wiley without providing specifics related to his allegations. (*Id.*). Hemmerle wrote back the next day:

> Thanks for your thoughts, and I'm sorry for what you're going through. . . . It is our view that [Wiley's] email [regarding the 2017 Review] was not derogatory in nature, but that he provided you with his professional assessment of your performance. . . . I regret that we have not been able to speak on this topic, and if phone calls are detrimental to your condition then I am happy to continue using email. But in order to move further in response to your accusations, we must have details.

(*Id.*). Appellant confirms he had not requested an accommodation as of June 21, 2018 and did not communicate with KMC between June 21, 2018 and July 17, 2018. (Tomlinson Dep., R. 45, Page ID#: 341–342). Thus, prior to July 17, 2018, it is certain that Appellant had not made any accommodation requests.

On July 17, 2018, Appellant finally emailed Hemmerle and Beene-Skuban, repeating his conclusory allegations about Wiley, without further elaboration. (Ex. 16 to Tomlinson Dep., R. 45-16, Page ID#: 447–448). Appellant requested that Hemmerle and Beene-Skuban interview Bouza and FSE Ryan Kremis, believing these employees would corroborate Appellant's allegations against Wiley. (*Id.*). Beene-Skuban replied to Appellant on July 23, 2018 (she was on vacation the week before), reiterating that she could not find any evidence of discrimination in the 2017 Review or Wiley's comments related to the same. (*Id.*). She also offered, "[i]f you feel [Wiley] missed some facts in his assessment, please bring those to his attention. If you are uncomfortable talking to [Wiley] one-on-one, you may include Randy [Hemmerle] in the discussion to make sure there is another party present."

(*Id.*). Appellant did not contact Wiley in response. (Wiley Dep, R. 44, Page ID#: 239; Tomlinson Dep., R. 45, Page ID#: 343).

### G.   Appellant's Sole Accommodation Request

Sometime between July 17, 2018 and July 26, 2018,[2] Appellant discussed his concerns regarding his review with Beene-Skuban, requested that the Company investigate the same, and made a single accommodation request related to his PTSD (Tomlinson Dep., R. 45, Page ID#: 349). As requested, KMC initiated a formal investigation regarding his concerns on July 26, 2018, while Appellant remained out on medical leave. (Ex. 18 to Tomlinson Dep., R. 45-18, Page ID#: 451).

With respect to the sole accommodation request, Appellant requested to report to non-exempt and non-supervisory employee, Bouza, instead of Wiley:

> Q.   And what was your specific accommodation that you requested?
>
> A.   My accommodation was – because, basically, I would get with [Bouza] all of the time, as far as my jobs and everything, and I said, "Can I just have it where I am working with [Bouza]?
>
> *   *   *

---

[2] Given that Appellant testified he made the accommodation request to Beene-Skuban, who was on vacation until July 23, 2018, the request most likely occurred between July 24 and 26, 2018.

Q.   Besides asking to work for [Bouza], you didn't request anything else related to your alleged disability, correct?

A.   Not that I know of.

*     *     *

Q.   Is it possible that you had this conversation about potential accommodations as part of the investigation that was done in this matter?

A.   No. I just felt that [Wiley] was discriminating against me, and I wanted somebody -- I wanted -- I said, "[Wiley] doesn't ever talk to me. [Wiley] doesn't ever deal with me." And I said, "As far as I am concerned, [Bouza] should be the one that I am relaying to instead of [Wiley]." Because I've had times where [Wiley] was like, "Well, I want you to call me about going over something." I would call him a number of times and leave voicemails, and he would never even take the time to answer me back. And I said, "At least [Bouza] will talk to me."

(Tomlinson Dep., R. 45, Page ID#: 341, 350).

At the time Appellant made this accommodation request, *Bouza was not a KMC supervisor or manager.* Rather, he was a non-supervisory Service Coordinator and did not supervise any KMC employees. (Tomlinson Dep., R. 45, Page ID#: 350; Wiley Dep., R. 44, Page ID#: 191, 253, 276). Notably, all IMM FSEs (and Service Coordinators) at KMC reported directly to Wiley. (Tomlinson Dep., R. 45, Page ID#: 316; Wiley Dep., R. 44, Page ID#: 191).

20

After considering Appellant's request and the business implications of such a request, KMC determined it was unable to accommodate it. (Jenny Beene-Skuban Deposition Transcript (hereinafter "Beene-Skuban Dep."), R. 43, Page ID#: 153, 163–164). However, in light of its decision, KMC explored the possibility of transferring Appellant to a separate KMC division called Netstal, where he could potentially work for another employee who was actually a supervisor. (*Id.* at Page ID#: 133, 153). At the time of the inquiry, there were no vacant positions at Netstal. (*Id.*).

**H.    Appellant Seeks and Accepts Alternative Employment in the Midst of Discussions Regarding His Sole Accommodation Request and the Investigation of His Allegations.**

On or around July 18, 2018, while he was on medical leave and purportedly unable to work at all, Appellant applied to work for Avure. (Tomlinson Dep., R. 45, Page ID#: 307–308). On August 1, 2018, Appellant was offered employment at Avure. He accepted. (Ex. 3 to Mot. Summ. J., R. 46-3, Page ID#: 523). Appellant completed all of his pre-hire paperwork by August 2, 2018. (*Id.* at Page ID#: 493). Avure offered Appellant more money than KMC. (Tomlinson Dep., R. 45, Page ID#: 309). Thus, while KMC and Appellant were interactively discussing his accommodation request and in the midst of a formal investigation regarding his allegations (see below), Appellant had already applied for and accepted alternative employment with Avure, despite informing KMC via numerous doctor's notes that

he was unable to work with or without a reasonable accommodation until at least September 6, 2018. (Tomlinson Dep., R. 45, Page ID#: 307–308; Ex. 14 to Tomlinson Dep., R. 45-14, Page ID#: 439–443).

## I.    KMC's Formal Investigation of Appellant's Allegations

Based on Appellant's vague complaints regarding Wiley and the 2017 Review, Beene-Skuban conducted a formal investigation from July 26, 2018 to August 13, 2018. (Ex. 18 to Tomlinson Dep., R. 45-18, Page ID#: 451–455). At the outset of the investigation, Beene-Skuban interviewed Appellant on July 26, 2018. (*Id.*). Appellant confirmed that his discrimination allegation was based exclusively on the 2017 Review and follow-up phone conversation with Wiley. (*Id.*). Appellant also alleged that Wiley intentionally lied to develop and/or justify the 2017 Review. (*Id.*).

During the course of the investigation, Appellant emailed Caprio a second time on July 28, 2018, essentially copying and pasting his May 18, 2018 to the President of KMC. (Ex. 17 to Tomlinson Dep., R. 45-17, Page ID#: 449–450). Caprio responded, "Curt, thank you for your second email on this topic. I can assure you we take this type of email very seriously at KraussMaffei and I have [Beene-Skuban] and [Hemmerle] looking into the situation as you know. . . . If there is anything specific I can do for you please let me know." (*Id.*). Appellant did

not respond to Caprio requesting any additional actions by KMC, despite the President's offer. (Tomlinson Dep., R. 45, Page ID#: 346).

Beene-Skuban interviewed five (5) KMC employees besides Appellant during the investigation, including Kremis and Bouza, at Appellant's request. (Ex. 18 to Tomlinson Dep., R. 45-18, Page ID#: 451–455; Tomlinson Dep., R. 45, Page ID#: 347). She also interviewed Appellant a second time on August 7, 2018, before issuing a determination and conclusion of the investigation. (Ex. 18 to Tomlinson Dep., R. 45-18, Page ID#: 453). Ultimately, Beene-Skuban found no evidence of discrimination or any violation of company policy, and concluded that Wiley treated Appellant professionally and similarly to all of the other FSE's under his supervision. (*Id.* at Page ID#: 455). She recorded interview summaries and her conclusions in an investigative report. (*Id.* at Page ID#: 451–455). Appellant does not dispute the accuracy of the descriptions of the interviews contained in Beene-Skuban's report. (Tomlinson Dep., R. 45, Page ID#: 347).

Beene-Skuban emailed Appellant her findings on August 20, 2018, recommending that, "once [Appellant] returns from medical leave, have a face-to-face meeting between [Appellant] and [Wiley], with legal and HR facilitating, in order to make sure the parties involved feel heard and are able to move forward." (Ex. 19 to Tomlinson Dep., R. 45-19, Page ID#: 456). Appellant understood that as

of August 20, 2018, KMC anticipated Appellant's return following his medical leave:

> Q.    So you would agree that, based on this recommendation, that the company understood that you were going to be returning from medical leave, correct?
>
> A.    Yes.
>
> Q.    And you had not told them – given them any reason to think otherwise, correct?
>
> A.    No.

(Tomlinson Dep., R. 45, Page ID#: 347–348).

Although Appellant testified that he requested a "group call" with KMC management before returning from his medical leave, there is no record evidence of such a contemporaneous request. The earliest mention of a "pre-return call" is during Appellant's deposition, and it appears to be an after-the-fact invention by Appellant. (Tomlinson Dep., R. 45, Page ID#: 334). That conclusion is supported by Appellant's Complaint and Interrogatory Responses, which state only that he requested a meeting with KMC, but not that he requested that the meeting occur *before* he returned to work. (Ex. 12 to Tomlinson Dep., R. 45-12, Page ID#: 404). Significantly, when Beene-Skuban and Hemmerle repeatedly offered to have a phone call with Appellant during his medical leave, he never accepted those offers and only responded by email days or weeks later. (*See supra*, Section II.F).

Moreover, KMC desired to be respectful of Appellant's medical needs during his leave, which is why Beene-Skuban proposed a meeting after he was medically cleared by a doctor to return to work. (Beene-Skuban Dep., R. 43, Page ID#: 152–153). Despite KMC's understanding that the parties would schedule a face-to-face meeting after Appellant was medically cleared to return to work on or about September 6, 2018, Appellant never informed KMC that he had already accepted alternative employment as of August 2, 2018. In fact, Appellant had been offered employment and completed his pre-hire paperwork weeks before he received the conclusions and recommendations of the investigation or KMC's offer to have a meeting between Appellant, Wiley, legal, and human resources. (Ex. 3 to Mot. Summ. J., R. 46-3, Page ID#: 523; Tomlinson Dep., R. 45, Page ID#: 307–308).

## J.    Appellant Voluntarily Resigns from KMC.

On Friday, August 24, 2018, while still on medical leave and unable to work per his physician's orders, Appellant resigned from KMC via email. (Ex. 19 to Tomlinson Dep., R. 45-19, Page ID#: 458). The following Monday, August 27, 2018, Appellant began working at Avure (Tomlinson Dep., R. 45, Page ID#: 307). With the exception of his resignation notice, Appellant never communicated with anyone at KMC after his second interview with Beene-Skuban on August 7, 2018. (Ex. 17 to Tomlinson Dep., R. 45-17, Page ID#: 449–450, Ex. 19 to Tomlinson Dep., R. 45-19, Page ID#: 458).

**K.    KMC Delegates Evaluation Drafting Duties to Service Coordinators.**

Following the investigation into Appellant's complaint, it became apparent to KMC that Wiley's duties of drafting evaluations for over forty (40) IMM FSEs and Service Coordinators (in addition to his other job duties) was excessive. (Beene-Skuban Dep., R. 43, Page ID#: 155–156). Based on this assessment, KMC decided to delegate the initial drafting of FSE evaluations to Service Coordinators, including Bouza, for the 2018 review cycle, which began approximately five (5) months after Appellant's resignation.[3] (Wiley Dep., R. 44, Page ID#: 260–261, 276; Beene-Skuban Dep., R. 43, Page ID#: 155). However, Bouza was not promoted to a supervisory role and did not have supervisory authority over any KMC employee. (Wiley Dep., R. 44, Page ID#: 261, 276). Indeed, Wiley remained the direct supervisor over all IMM FSEs and Service Coordinators and retained final decision-making authority relative to the evaluations even after these initial drafting duties were delegated. (Wiley Dep., R. 44, Page ID#: 191, 260–261).

---

[3] Appellant's Brief mentions in a parenthetical that Bouza is listed as a "Manager" on another FSE's 2019 evaluation, and cites this as evidence that the district court did not address this "important fact." (Doc. 27, Page: 41). In the software used by KMC at that time, the person who created the initial draft evaluation was automatically listed as "Manager" in the resulting evaluation. This issue was directly addressed during the depositions of John Wiley and Aeric Bouza, who both confirmed that Bouza was not a supervisor or manager. (Wiley Dep., R. 44, Page ID#: 261, 273, 276). This fact is undisputed in the record despite Appellant's attempt to make it appear disputed.

## SUMMARY OF THE ARGUMENT

The District Court's Order granting summary judgment to KMC on all Appellant's claims was well-reasoned, supported by the record evidence, law, and applicable Sixth Circuit precedent. Accordingly, the District Court's Decision should be affirmed by the Court.

Appellant's Brief simply reiterates the same facts and arguments presented in his Opposition to KMC's Motion for Summary Judgment, arguing that the District Court ignored or disregarded material facts. However, Appellant fails to accurately represent material record evidence, legal reasoning, or applicable precedent upon which the District Court relied in granting summary judgment. Based on an objective review of the same, it is not a close call whether summary judgment was appropriate. The District Court correctly concluded as a matter of law that a myriad of reasons existed supporting summary judgment, including the following: (1) Appellant could not prove a *prima facie* case of disability discrimination; (2) KMC never failed to provide Appellant a reasonable accommodation; (3) KMC properly engaged in the interactive process with Appellant; (4) Appellant was not constructively discharged as a matter of law; and (5) Appellant could not establish a *prima facie* case of retaliation. (Order on Mot. Summ. J., R. 62, Page ID#: 744–769).

For numerous reasons and in light of several legal theories, the District Court accurately represented the record evidence, correctly applied applicable Sixth Circuit precedent, and reached the proper conclusion—that Appellant failed to prove his disability discrimination, failure to accommodate, and retaliation claims as a matter of law, thereby warranting summary judgment to KMC.

## III.    ARGUMENT

### A.    Legal Standard

#### i.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 states the Court shall grant summary judgment if the movant shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "[T]o avoid summary judgment, the non-moving party must show that there is more than 'some metaphysical doubt as to material facts.'" *Goodman v. J.P. Morgan Inv. Mgmt.*, 954 F.3d 852, 859 (6th Cir. 2020) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Further, "[t]he 'mere existence of a scintilla of evidence' in support of the non-moving party does not establish a genuine issue of material fact." *Goodman*, 954 F.3d at 860 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "The moving party is entitled to summary judgment when the non-moving party 'fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Goodman*, 954 F.3d at 860 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

### ii.    Failure to Accommodate

The Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Kentucky Civil Rights Act ("KCRA"), Ky. Rev. Stat. § 344.010 *et seq.*, prohibit discrimination against a qualified individual with a disability. Courts in the Sixth Circuit use the same analysis for disability discrimination claims raised under the ADA as those raised under the KCRA.[4] *Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682 at *12 (E.D. Ky. Jun. 21, 2018). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities; a record of such an impairment; or being regarded as having such an impairment." 42 U.S.C. § 12102(1).

As defined by the ADA, a "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Accordingly, individuals who cannot perform their essential job functions because of their disability are not covered by the ADA. *See*, *e.g.*, *Moore v. Mason Cty.*, 2018 U.S. Dist. LEXIS 149752 at *41 (E.D. Ky. Sep. 4, 2018) (granting summary

---

[4] All references to the ADA in Appellee's Brief should be understood to incorporate the KCRA.

judgment in favor of employer because plaintiff's disability prevented him from performing his essential job duties).

A plaintiff alleging his employer failed to reasonably accommodate his disability must show that: "(1) he is disabled within the meaning of the ADA; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) his employer knew or had reason to know about his disability; (4) he requested an accommodation; and (5) the employer failed to provide the necessary accommodation." *Keogh v. Concentra Health Servs.*, 752 F. App'x 316, 326 (6th Cir. 2018). At the *prima facie* stage, the plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable." *Id.* (quoting *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir. 2007)).

When an employee initially requests a disability accommodation, the ADA requires an employer to engage in an "individualized inquiry," based on an "interactive process" to determine potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(3). Both parties must participate in this process in good faith. *Kleiber*, 485 F.3d at 871. Where the interactive process is triggered, but not successfully resolved, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Id.*

### iii.    Retaliation

A *prima facie* case of retaliation under the ADA requires a plaintiff to prove: (1) he engaged in legally protected activity under the ADA; (2) the defendant knew of the plaintiff's exercise of that right; (3) the defendant took an employment action against the plaintiff; and (4) the protected activity and the employment action are causally connected to the exercise of protected rights. *Keogh*, 752 F. App'x at 325. ADA retaliation claims require proof that the plaintiff's protected activity was the "but-for," cause of an adverse employment action. *Id.*

### iv.    Constructive Discharge

A plaintiff alleging a "constructive discharge" "must show that [his] working conditions were *objectively* intolerable and that [his] employer *deliberately* created those conditions in hopes that they would force [him] to quit." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018) (emphasis added). Thus, the analysis for constructive discharge applies an objective "reasonable person" standard when assessing constructive discharge claims, and does not consider the subjective perspective of the plaintiff. *See*, *e.g.*, *Savage v. Gee*, 665 F.3d 732, 739–40 (6th Cir. 2012) (rejecting a constructive discharge claim stemming from an employee's negative subjective response to criticism). The constructive discharge doctrine does not protect employees who resign their employment "in apprehension that conditions may deteriorate later." *Agnew v.*

31

*BASF Corp.*, 286 F.3d 307, 310 (6th Cir. 2002). Based on this demanding standard, courts in the Sixth Circuit have opined that "[c]onstructive discharge is hard to prove." *Groening*, 884 F.3d at 630.

### B.    Appellant Did Not Appeal the District Court's Decision Regarding His Disability Discrimination Claim.

The District Court correctly analyzed Appellant's disability discrimination and failure to accommodate claims as separate and distinct causes of action. (Order on Mot. Summ. J., R. 62, Page ID#: 758–764). Appellant's Brief only argues that the District Court erred in granting summary judgment on the failure to accommodate claim. (Appellant Brief, Doc. 27, Pages: 31–46). Accordingly, Appellant has waived any appeal related to his disability discrimination claim. *Tartt v. City of Clarksville*, 149 F. App'x 456, 463 (6th Cir. 2005).

Even if Appellant had properly appealed his disability discrimination claim (he did not), his arguments regarding this claim still fail for the reasons outlined in the District Court's Order. Specifically, and as described in greater detail in Section III.D below, Appellant did not suffer any adverse employment action while working for KMC and was not constructively discharged.

Moreover, although the District Court declined to address this issue in its Order, KMC maintains that Appellant was not a "qualified individual" with a disability within the meaning of the ADA because the uncontroverted facts establish that Appellant could not perform his essential job duties with or without a

reasonable accommodation between March 2018 and his resignation, while he was on medical leave. (Tomlinson Dep., R. 45, Page ID#: 336; Ex. 14 to Tomlinson Dep., R. 45-14, Page ID#: 434–443). Appellant's testimony and contemporaneous FMLA documents indisputably establish these facts. *Id.* Because it is undisputed that Appellant could not perform his essential job duties with or without a reasonable accommodation during this period, Appellant was a not "qualified individual" with a disability as a matter of law at the time he sought a reasonable accommodation. 42 U.S.C. § 12111(8). *See also Moore*, 2018 U.S. Dist. LEXIS 149752 at *41 (finding that plaintiff was not a qualified individual with a disability where plaintiff's employer terminated him while he was on disability leave because he could not perform his job duties). As a result, Appellant's discrimination claim fails as a matter of law even if Appellant had properly appealed it.

### C.    The District Court Properly Granted Summary Judgment to KMC on Appellant's Failure to Accommodate Claim.

With respect to Appellant's failure to accommodate claim, the District Court correctly concluded as a matter of law that: (1) Appellant never requested a reasonable accommodation for his disability; (2) KMC properly engaged in the interactive process with Appellant; and (3) Appellant failed to meaningfully engage in the interactive process. Because those conclusions are irrefutably

confirmed by the record evidence, the law, and appropriate reliance on Sixth Circuit precedent, the District Court's Order should be affirmed.

### i.    Appellant Never Requested a Reasonable Accommodation.

It is undisputed that the only accommodation Appellant requested was to report to a non-supervisory employee, Service Coordinator Aeric Bouza, rather than Wiley.[5] (Tomlinson Dep., R. 45, Page ID#: 349–350). As noted above, all IMM FSEs at KMC reported exclusively to Wiley, and at the time Appellant was employed, there were no other Service Managers within the division besides Wiley. (Tomlinson Dep., R. 45, Page ID#: 316, 350). It is undisputed that this accommodation request occurred no earlier than July 17, 2018, and more likely occurred on or after July 24, 2018, because Beene-Skuban, to whom Appellant made the request, was on vacation on July 17, 2018 and only returned to work on July 23, 2018. (Ex. 16 to Tomlinson Dep., R. 45-16, Page ID#: 447–448).

In the Sixth Circuit, a plaintiff's request to work for his preferred supervisor is not a reasonable accommodation as a matter of law. For example, in *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652 (6th Cir. 2016), the plaintiff suffered from

---

[5] Appellant's Brief is ambivalent about whether his request for a "pre-return call" was an accommodation request, seemingly because Appellant testified repeatedly that his request to report to Bouza was his only accommodation request. (Tomlinson Dep., R. 45, Page ID#: 350). Regardless, there is no evidence in the record that Appellant made a contemporaneous request for a "pre-return call." (*See supra*, Section II.I). Moreover, KMC had unambiguously agreed to hold a meeting with Appellant to discuss his accommodation requests when he returned from medical leave. (*Id.*).

"acute stress reactions" causing him to suffer panic and stress attacks. *Id.* at 653. The plaintiff requested and was granted leave by his employer to address this disability. *Id.* When the plaintiff failed to return from leave, he was terminated. *Id.* at 654. Before his termination, the plaintiff requested, among other accommodations, to transfer to a different position so that he could report to a different supervisor. *Id.* at 657. The court found that such a transfer was not a reasonable accommodation, stating, "an employer is not obliged to honor, as a 'reasonable accommodation,' an employee's request for assignment to a different supervisor." *Id.* at 658 no. 2.

In *Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672 (6th Cir. 2014), the Sixth Circuit reached the same conclusion. There, the plaintiff took short-term disability leave after being diagnosed with depression. *Id.* at 674. After returning to work, the plaintiff complained that her supervisor was harassing her for frequent trips to the restroom, which was a side effect of her medication. *Id.* Because plaintiff believed the alleged harassment exacerbated her depression, she requested to report to a different supervisor as an accommodation for her disability. *Id.* at 680. This Court affirmed summary judgment in favor of the employer, in part, because plaintiff's request to report to a different supervisor as an accommodation for her depression was unreasonable. *Id.* at 680–681.

More recently, another court in this Circuit plainly concluded, "a request for

a different supervisor is not a reasonable accommodation that an employer is required to provide under the law." *Spagnuolo v. Auto Club Grp. Ins. Co.*, 2020 U.S. Dist. LEXIS 129176 at *29 (E.D. Mich. Jul 22, 2020).

This uniform legal position in the Sixth Circuit is further supported by administrative guidance. See EEOC Enforcement Guidance, Reasonable Accommodation and Undue Hardship, No. 915.002, Answer to Question 33, available at https://bit.ly/30hw5bG (last visited May 6, 2022) ("An employer does not have to provide an employee with a new supervisor as a reasonable accommodation.").

Appellant attempts to muddy the issue by arguing that the District Court should not have adopted a "blanket rule" and instead should have applied a fact-specific assessment of the reasonableness of Appellant's accommodation request. (Appellant's Brief, Doc. 27, Page: 36). However, that argument fails to two (2) reasons. First, despite arguing against a blanket rule on this issue, Appellant failed to present any evidence that his request to report to a non-managerial co-worker was reasonable or to cite any legal authority where such a request was deemed reasonable.[6] Second, the District Court *did* apply a fact-specific assessment of

---

[6] In *Kennedy v. Dresser Rand Co.*, 193 F.3d 120 (2d Cir. 1999), cited on p. 27 of Appellant's Brief, the 2nd Circuit discourages a per se rule on the reasonableness of requesting a different supervisor as an accommodation. (Appellant's Brief Doc. 27, Page: 37). Notably, however, the *Kennedy* court still found such a request unreasonable. Since 1999, when *Kennedy* was published, the Sixth Circuit has

Appellant's request and concluded it was unreasonable: "KMC was not obliged to. . . accommodate Tomlinson *by assigning a coworker to supervise him*. ((Order on Mot. Summ. J., R. 62, Page ID#: 764) (emphasis added). In short, the District Court assessed Appellant's request to hand-select a non-supervisory coworker to be his supervisor and astutely concluded it was unreasonable under Sixth Circuit precedent.

Appellant also repeatedly argues that his accommodation request was reasonable in hindsight because KMC purportedly adopted a new "reporting structure" after his resignation. (Appellant's Brief, Doc. 27, Page: 25). That argument is also unavailing for two reasons. First, as explained above, the undisputed facts establish that KMC never modified its reporting structure and/or its evaluation processes, except for delegating an initial draft of IMM FSE evaluations to Service Coordinators. Thus, any statement to that end is a misrepresentation of the evidence in the record. Second, even if KMC had actually modified its reporting structure (it did not), whether Appellant's accommodation request was reasonable must be based on the state of the business *at the time of his request*, not five (5) months after the Appellant abruptly resigned to accept alternative employment. *See Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 729 (6th Cir. 2000) (plaintiff was not entitled to reassignment because the

_____

uniformly concluded that requests to report to a different supervisor are unreasonable, as noted in the cases described above.

requested position was not foreseeably vacant at the time of the request, even though it became vacant later).

Finally, KMC requests that the Court consider the practical absurdity that would result in holding that Appellant's sole accommodation request was reasonable based on the facts presented in this case. As described above, Appellant demanded that an hourly, non-supervisory coworker of his choosing become his supervisor after Wiley told him they would have to "agree to disagree" about the 2017 performance based on multiple negative customer reviews. Appellant's demand occurred despite the fact that the 2017 review was divorced from any discipline, reduction in duties or pay, or even a performance improvement plan.

If KMC had granted Appellant's unreasonable request to report to Bouza, it is entirely foreseeable that the door would be wide open for Appellant to demand a new supervisor of his choosing every time his work performance was criticized or he disagreed with an evaluator. Simply put, what Appellant requested was not an accommodation that would have permitted him to perform the essential functions of his job. Rather, it was a request of permanent immunity from criticism even when he did not perform his job duties satisfactorily. Such an outcome is both unreasonable and detrimental to an employer's ability to operate its business.

Based on existing Sixth Circuit precedent, Appellant's request to report to Bouza as opposed to Wiley was unreasonable as a matter of law. Therefore, KMC

had no duty to honor his sole accommodation request and this Court should affirm the District Court's grant of summary judgment on Appellant's failure to accommodate claim.

### ii.    KMC Properly Engaged in the Interactive Process, While Appellant Was Responsible for Its Breakdown.

The record evidence conclusively establishes that KMC engaged with Appellant in an interactive process throughout his employment, even though his accommodation request was unreasonable. Importantly, engaging in the interactive process does not require an employer to approve an employee's preferred accommodation request, or even propose alternate accommodations, as Appellant's Brief suggests. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 203 (6th Cir. 2010) ("[T]he employer is not required to propose a counter accommodation in order to participate in the interactive process in good faith.").[7]

As stated above, the undisputed facts establish that Appellant's only accommodation request was to report to a non-supervisory co-worker, Bouza, rather than his manager, Wiley. Contrary to Appellant's assertions, the record proves that KMC did not "bluntly" deny Appellant's request or "reject [it] out of

---

[7] As noted above, KMC also sought alternate positions for Appellant at Netstal (one of KMC's affiliated businesses), but no position was available. This inquiry further demonstrates KMC's good faith in considering Appellant's request. *Kleiber*, 485 F.3d at 862 ("The interactive process requires communication and good-faith exploration of possible accommodations.") (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1114 (9th Cir. 2000)).

hand." Rather, the uncontroverted facts establish that KMC actively engaged in communication with Appellant from the time he first raised his accommodation request through the time he abruptly resigned while on medical leave.

Throughout the process, KMC continually offered to communicate with Appellant via whatever method made him most comfortable while he was on leave, and offered to have Human Resources Manager Hemmerle present during any conversations between Appellant and Wiley. (Ex. 15 to Tomlinson Dep., R. 45-15, Page ID#: 445; Ex. 16 to Tomlinson Dep., R. 45-16, Page ID#: 447). Appellant admits that he never apprised KMC of the fact that his PTSD made it difficult for him to communicate sometimes, which Appellant now provides as the reason he did not always respond to KMC's efforts to communicate with him. (Tomlinson Dep., R. 45, Page ID#: 343).

The District Court found the facts described above proved that Appellant failed to actively engage in the interactive process:

> KMC had responded and contacted Tomlinson multiple times, by multiple mediums, inviting him to describe his situation and to suggest a solution. Tomlinson failed to reciprocate in any constructive or meaningful way, failing repeatedly to respond directly to KMC's several prompts for discussion until July 17, 2018. Until then, Tomlinson's needs had remained either completely vague or unarticulated despite KMC's multiple attempts to elicit a productive response. . . . There is no reasonable inference to be drawn from the record evidence that KMC failed to engage in the interactive process with Tomlinson in good faith.

(Order on Mot. Summ. J., R. 62, Page ID#: 763–764).

At no point after his initial request for an accommodation, made while he was out on medical leave, did Appellant request any other accommodations. Rather than wait to engage in a follow-up conversation with KMC management upon his return from medical leave on or after September 6, 2018, Appellant accepted employment at Avure on August 2, 2018. Shortly thereafter he abruptly resigned his employment with KMC on August 24, 2018, without any advance warning to the Company, thereby terminating the interactive process at a time when KMC believed Appellant intended to return to have a discussion with Wiley, legal, and human resources. (Ex. 19 to Tomlinson Dep., R. 45-19, Page ID#: 458).

The Court can reasonably interpret Appellant's abrupt resignation as the event that terminated the interactive process, as the District Court properly concluded. *Arndt v. Ford Motor Co.*, 716 F. App'x 519, 528 (6th Cir. 2017) ("[Appellant] terminated the interactive process by resigning his position."); *Neloms v. Charleston Cty. Sch. Dist.*, 2019 U.S. Dist. LEXIS 157732 at *24 (D. S.C. Jun. 19, 2019) ("[The court] agrees with Defendant that Appellant terminated the interactive process before Defendant could make a decision regarding an appropriate accommodation plan."); *Williams v. Lincoln Fin. Grp.*, 2018 U.S. Dist. LEXIS 122349 at *32 n. 8 (N.D. Ind. Jul. 23, 2018) ("[Appellant chose] instead to resign her position . . . thereby also terminating the interactive process."). In the

same way, Appellant's lack of good faith participation in the interactive process is demonstrated by his application for, and acceptance of, alternate employment weeks before KMC completed its internal investigation or before he was set to return from medical leave. For this additional reason, the District Court properly granted summary judgment on Appellant's accommodation claim.

### iii.   KMC Is Not Required to Demonstrate Undue Hardship as Appellant Suggests.

Under the ADA, an employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). However, as described above, Appellant failed to satisfy his initial burden of showing that his request was objectively reasonable as a matter of law. Thus, KMC was not required to prove undue hardship to avoid his reassignment to a non-supervisor. *Gearhart v. E.I. DuPont de Nemours & Co.*, 833 F. App'x 416, 425 (6th Cir. 2020) ("[A]n employer's burden to show undue hardship only arises after the employee identifies a *reasonable* accommodation.") (emphasis added).

Based on the foregoing undisputed facts: (1) Appellant's accommodation request to report to Bouza instead of Wiley was unreasonable under Sixth Circuit precedent; and (2) KMC engaged in good-faith discussions concerning Appellant's accommodation request despite his failure to do the same. Accordingly,

Appellant's claim that KMC failed to accommodate him fails as a matter of law, and the District Court properly concluded that KMC is entitled to summary judgment on Appellant's failure to accommodate claim.

### D.    The District Court Properly Granted Summary Judgment on Appellant's Retaliation Claim.

Appellant's retaliation claim relies on many of the same allegations as his failure to accommodate claim and accordingly fails for many of the same reasons. Specifically, the retaliation claim fails because it is undisputed that Appellant never suffered an adverse employment action while working at KMC. While Appellant attempts to argue that his resignation was a constructive discharge, the record evidence and Sixth Circuit precedent does not support such a conclusion.

### i.    Appellant Did Not Suffer an Adverse Employment Action.

It is undisputed that Appellant did not suffer any tangible adverse employment action while working at KMC—he was not demoted, his pay was not decreased, he was not disciplined, and he was not terminated. (Tomlinson Dep., R. 45 Page ID#: 330). Therefore, Appellant cannot establish this element of a retaliation claim, and his claim fails as a matter of law. *Keogh*, 752 F. App'x at 325. The District Court properly arrived at this conclusion in its Order. (Order on Mot. Summ. J., R. 62, Page ID#: 764–765).

### ii. Appellant Did Not React to KMC's Actions as a Reasonable Person Would.

Appellant attempts to obscure the fact that he did not suffer any adverse employment action by arguing that KMC constructively discharged him. However, the District Court properly concluded that the evidence in the record does not support a finding of constructive discharge. (Order on Mot. Summ. J., R. 62, Page ID#: 766–768).

On that issue, Appellant acknowledged that KMC provided him medical leave and short-term disability pay and anticipated his to return to work at the end of his leave. (Tomlinson Dep., R. 45, Page ID#: 345, 347–348). The record further establishes that KMC intended to meet with Appellant upon his return from medical leave to discuss how Appellant could "move forward" with his employment at KMC. *Id.* Indeed, the very basis of Appellant's dissatisfaction with his employment at KMC amounted to his desire to report to someone other than his manager—a person he only saw once or twice a year in person and with whom he rarely spoke. (Wiley Dep., R. 44, Page ID#: 205). To reiterate, Appellant resigned from KMC in August 2018, while he was on medical leave, and when he had not had any interaction with Wiley in several months. Such indisputable facts undercut any inference that Appellant's work conditions at KMC were so "objectively intolerable" that his resignation constituted a constructive discharge or that KMC deliberately created such conditions to force Appellant to resign.

As noted above, Sixth Circuit courts use the objective "reasonable person" standard when assessing constructive discharge claims. *Groening*, 884 F.3d at 630. Indeed, this Court has recently declined to find constructive discharge based on the plaintiff's unreasonable reaction to criticism, declaring "criticism and negative feedback do not suffice, especially when contained to a few isolated incidents." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020).

Importantly, Appellant testified, and Appellant's Brief explicitly acknowledges, that Appellant did not react to Wiley's or KMC's treatment as a reasonable person would have. (Appellant's Brief, Doc. 27, Page: 49) ("[Appellant's condition makes him sensitive to aggressive behavior. A person without PTSD may have been able to handle it; Appellant could not."); (Tomlinson Dep., R. 45, Page ID#: 299, 333) (Appellant acknowledged that he is oversensitive and prone to misinterpret others' statements). Based on his own admissions, Appellant did not act like a reasonably objective person would have under the same set of circumstances, thereby substantially undercutting his claim for that reason alone.

### iii. There is No Evidence That KMC Deliberately Created an Intolerable Work Environment for Appellant.

Even if Appellant could prove objectively intolerable working conditions—which he clearly cannot—he still cannot establish that KMC deliberately created such conditions in the hope that he would resign.

On this point, Sixth Circuit courts have consistently declined to find constructive discharge in situations similar to, or even more egregious than the one Appellant alleges he experienced in this case. *See Brister v. Mich. Bell Tel. Co.*, 705 F. App'x 356, 359–360 (6th Cir. 2017) (finding no constructive discharge despite allegations that supervisor repeatedly made employee cry, called her "stupid" during their daily coaching sessions, and told her she needed to "seek psychological help"); *Arndt*, 716 F. App'x at 530 (finding no constructive discharge where plaintiff alleged his manager badgered and disrespected him about his PTSD, prompting plaintiff to resign); *see also Curtis v. Hanger Prosthetics & Orthotics, Inc.*, 2002 U.S. Dist. LEXIS 11371 at *9 (W.D. Ky. Jun. 25, 2002) (finding no constructive discharge where an employer's harsh criticism of plaintiff's job performance prompted her to take a leave of absence, during which she resigned).

Appellant alleges that his constructive discharge was based in part on KMC's alleged failure to make him feel comfortable with returning to work while he was on leave. (Tomlinson Dep., R. 45, Page ID#: 334). However, the evidence in the record clearly shows that KMC repeatedly informed Appellant that it would take reasonable steps to make him comfortable returning to work. During Appellant's leave, KMC management contacted Appellant numerous times for status updates and in an effort to solicit input concerning his work-related issues.

In several of these communications, Hemmerle and/or Beene-Skuban offered to arrange telephone conversations with Appellant, but Appellant ignored or declined their offers for days or even weeks at a time. (*Id.*). Obviously, these uncontested facts further undercut Appellant's argument that KMC did not make Appellant comfortable returning from leave.

Additionally, Appellant alleges that he was waiting for KMC to schedule a "group phone call" or a "pre-return call" between himself, Wiley, Hemmerle, and Beene-Skuban when he returned to work. The proposed telephone call would purportedly be used to resolve the 2017 Review and to discuss his request to report to another non-managerial employee, Bouza, rather than Wiley. However, Appellant's reliance on the lack of a call to establish his constructive discharge claim is misplaced and illogical because, rather than waiting to see if KMC actually scheduled the requested call upon his return to work, Appellant unilaterally applied for and accepted alternate employment before resigning his employment, thereby mooting the need for a call.

Additionally, as stated above, Appellant did not specifically request a "pre-return call" during his employment. In fact, KMC agreed to meet with Appellant after he return from medical leave to discuss his accommodations, but Appellant resigned before the end of his medical leave, thus eliminating the opportunity to hold this meeting. In light of these undisputed facts, the failure to hold a "group

phone call" or a "pre-return call" with Appellant cannot serve as a basis for a cognizable constructive discharge claim.

Appellant asks this Court to apply *Green v. Brennan*, 578 U.S. 547 (2016), which he argues the District Court ignored. The Court in *Green* opined that an employee claiming constructive discharge need not prove that the employee's resignation "was the employer's plan all along." *Id.* at 1779–80. However, this Court has previously held that the *Green* standard applies only when a plaintiff has initially proved that the employer "engage[d] in such *intolerable discriminatory conduct* that a *reasonable* person would feel compelled to resign." *Everly v. Everly*, 958 F.3d 442, 463 (6th Circuit 2020) (emphasis added). As described above, Appellant, who admits he does not operate as an objectively reasonable person, has provided no evidence that KMC's actions constituted intolerable discriminatory conduct or that KMC intended or desired his resignation. Therefore, even if the District Court had considered *Green*, it would not have changed the outcome of the District Court's decision.

Finally, Appellant's Brief cites *Smith v. Henderson*, 376 F.3d 529 (6th Cir. 2004), to support his argument that the denial of his request to report to Bouza constituted a constructive discharge. However, the court's findings in *Smith* are distinguishable and inapplicable to the facts of this case. There, the employer approved a reasonable accommodation for plaintiff's disability—an 8-hour

workday and 40-hour workweek—before later unilaterally rescinding it, causing significant harm to the plaintiff's health. *Id.* at 535, 538. The *Smith* court concluded that the deliberate rescission of the plaintiff's previously-approved accommodation and blatant refusal to offer other accommodations could be interpreted as intentionally trying to force plaintiff's resignation. *Id.* at 538. In contrast to *Smith*, there is no evidence that KMC rescinded a previously-approved accommodation or denied a reasonable accommodation request. Thus, any comparison to the facts of *Smith* is unavailing.

Indeed, Appellant fails to address a case cited by KMC before the District Court that is wholly on-point—*Arndt v. Ford Motor Co.*, 716 F. App'x 519 (6th Cir. 2017). In *Arndt*, the plaintiff also suffered from PTSD and requested two extended medical leaves as accommodations for his condition. *Id.* at 522–523. Upon return from leave, the plaintiff requested to bring his service dog to work as an accommodation for his PTSD. *Id.* at 523–524. The plaintiff became upset about the delay in approving his request. *Id.* at 526. Based on his frustration with his employer's delay in approving his accommodation request, the plaintiff resigned. *Id.* at 526. However, the *Arndt* court concluded that the plaintiff could not prove constructive discharge because, "there was no evidence that [the employer] deliberately created intolerable working conditions that would have forced a reasonable person to quit." *Id.* at 530.

Based on the facts of this case and overwhelming amount of Sixth Circuit precedent regarding constructive discharge, it is evident that the District Court arrived at the correct conclusion in determining that Appellant was not constructively discharged.

### iv. Absent an Adverse Employment Action, Appellant's Retaliation Claim is Indistinguishable from His Failure to Accommodate Claim.

Absent a finding of constructive discharge or any other adverse employment action, the District Court correctly concluded that the record did not support a *prima facie* case of retaliation. Appellant argues that KMC's alleged failure to accommodate Appellant's disability is evidence of retaliation because, "when an employee makes a repeated request for an accommodation and that request is both denied and no other reasonable alternative is offered," it constitutes a constructive discharge that could support a retaliation claim. (Appellant's Brief, Doc. 27, Page: 49) (citing *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008)).

Without belaboring the point, Appellant's argument fails because: (1) Appellant only made one accommodation request (not repeated requests), which was unreasonable; and (2) Appellant resigned before KMC could discuss any alternative accommodations with him. Therefore, Appellant cannot prove that he suffered any adverse employment action, and the District Court properly concluded

that Appellant failed to prove retaliation as a matter of law.

## CONCLUSION

Appellant's Brief recycles the same unsuccessful and unconvincing arguments that he presented to the District Court in opposition to KMC's Motion for Summary Judgment. Appellant's argument that the District Court ignored or disregarded material facts or applicable case law is misplaced. In fact, the District Court's Order weighed all of the same facts and arguments presented in Appellant's Brief and concluded that his entire argument rested on Appellant's own subjective beliefs and unreasonable reactions to KMC's actions. The District Court correctly found ample undisputed evidence supporting that KMC acted reasonably and lawfully with respect to Appellant's employment and accommodation request, and that Appellant could not prove his claims as a matter of law. Accordingly, KMC respectfully requests that this Court affirm the District Court's grant of summary judgment in its entirety.

Respectfully submitted,

*/s/ Michael B. Mattingly*
Michael W. Hawkins (0012707)
Michael B. Mattingly (0089847)
Dinsmore & Shohl LLP
255 E. Fifth Street, Suite 1900
Cincinnati, OH  45202
Telephone: 513.977.8200
Facsimile: 513.977.8141

E-mail: michael.hawkins@dinsmore.com
michael.mattingly@dinsmore.com

*Attorneys for Defendant-Appellant Krauss-Maffei Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of May, 2022, the foregoing document was electronically filed via the Court's CM/ECF System, which will notify all parties of the filing of same. The parties may access this filing through the Court's system.

/s/ *Michael B. Mattingly*
Michael B. Mattingly

## <u>CERTIFICATE OF COMPLIANCE</u>

This Brief of Appellee complies with the type-volume limitation of 6th Cir. R. 32(b) and Fed. R. App. P. 32(a)(7)(B). This brief contains 11,907 words, excluding the corporate disclosure statement, table of contents, table of authorities, statement with respect to oral argument, designation of relevant district court documents, certificate of counsel, addendum, and designation of record contents.

/s/ *Michael B. Mattingly*
Michael B. Mattingly
*Counsel for Defendant-Appellee*

# **ADDENDUM**

Pursuant to 6 Cir. R. 32.1, copies of the following unpublished decisions

cited herein are attached to this brief:

*Arndt v. Ford Motor Co.*, 716 F. App'x 519 (6th Cir. 2017)

*Brister v. Mich. Bell Tel. Co*., 705 F. App'x 356 (6th Cir. 2017)

*Burdett-Foster v. Blue Cross Blue Shield of Mich.*, 574 F. App'x 672
(6th Cir. 2014)

*Curtis v. Hanger Prosthetics & Orthotics, Inc.*, 2002 U.S. Dist. LEXIS
11371 (W.D. Ky. Jun. 25, 2002)

*Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652 (6th Cir. 2016)

*Gearhart v. E.I. DuPont de Nemours & Co.*, 833 F. App'x 416 (6th Cir.
2020)

*Jackson v. Regal Beloit Am., Inc.*, 2018 U.S. Dist. LEXIS 103682
(E.D. Ky. Jun. 21, 2018)

*Keogh v. Concentra Health Servs.*, 752 F. App'x 316 (6th Cir. 2018)

*Moore v. Mason Cty.*, 2018 U.S. Dist. LEXIS 149752 (E.D. Ky. Sep. 4,
2018)

*Neloms v. Charleston Cty. Sch. Dist.*, 2019 U.S. Dist. LEXIS 157732 (D.
S.C. Jun. 19, 2019)

*Spagnuolo v. Auto Club Grp. Ins. Co.*, 2020 U.S. Dist. LEXIS 129176
(E.D. Mich. Jul 22, 2020)

*Tartt v. City of Clarksville*, 149 F. App'x 456 (6th Cir. 2005)

*Williams v. Lincoln Fin. Grp.*, 2018 U.S. Dist. LEXIS 122349 (N.D. Ind.
Jul. 23, 2018)

## APPELLEE'S DESIGNATION OF RECORD CONTENTS

| Description of Entry | Record No. | Page ID # |
|---|---|---|
| **Trial Case (R.)** | | |
| Complaint | 1 | 1-5 |
| Deposition of Jenny Beene-Skuban | 43 | 108-178 |
| Deposition of John Wiley | 44 | 179-293 |
| Deposition of Curt Tomlinson | 45 | 294-377 |
| Exhibit 4 to Tomlinson Deposition | 45-4 | 407-408 |
| Exhibit 5 to Tomlinson Deposition | 45-5 | 409 |
| Exhibit 6 to Tomlinson Deposition | 45-6 | 410-411 |
| Exhibit 7 to Tomlinson Deposition | 45-7 | 412-413 |
| Exhibit 9 to Tomlinson Deposition | 45-9 | 419-421 |
| Exhibit 10 to Tomlinson Deposition | 45-10 | 422-423 |
| Exhibit 11 to Tomlinson Deposition | 45-11 | 424 |
| Exhibit 12 to Tomlinson Deposition | 45-12 | 425-428 |
| Exhibit 13 to Tomlinson Deposition | 45-13 | 429-430 |
| Exhibit 14 to Tomlinson Deposition | 45-14 | 431-443 |
| Exhibit 15 to Tomlinson Deposition | 45-15 | 444-446 |
| Exhibit 16 to Tomlinson Deposition | 45-16 | 447-448 |

Exhibit 17 to Tomlinson Deposition          45-17          449-450

Exhibit 18 to Tomlinson Deposition          45-18          451-455

Exhibit 19 to Tomlinson Deposition          45-19          456-458

Motion for Summary Judgment                 46             459-485

Exhibit 2 to Motion for Summary Judgment    46-2           486

Exhibit 3 to Motion for Summary Judgment    46-3           487-525

Opinion & Order Granting Summary
Judgment                                    62             744-769

Notice of Appeal                            65             772