**Case No. 21-6245**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**CURT TOMLINSON**
**Plaintiff-Appellant**

**vs.**

**KRAUSS-MAFFEI, CORPORATION**
**Defendant-Appellee**

**ON APPEAL FROM THE UNITED STATES
DISTRICT COURT FOR THE
EASTERN DISTRICT OF KENTUCKY**

---

**REPLY BRIEF OF PLAINTIFF-APPELLANT CURT TOMLINSON**

---

**David Torchia (0015962)**
**Tobias, Torchia & Simon**
**302 Mercantile Center**
**120 E. Fourth Street**
**Cincinnati, Ohio 45202**
**(513) 241-8137**
**davet@tktlaw.com**
**Attorney for**
**Plaintiff-Appellant**

## TABLE OF CONTENTS

**Item**                                                                              **Page**

Table of Authorities ......................................................................... iii

INTRODUCTION ........................................................................... 1

ARGUMENT ................................................................................... 2

      A.    The District Court Erred in Granting Summary
             Judgment on Plaintiff's Failure-to-Accommodate Claim .......... 2

      B.    The District Court Erred in Granting Summary
             Judgment on Plaintiff's Retaliation Claim .............................. 19

CONCLUSION ............................................................................. 23

CERTIFICATE OF COMPLIANCE ............................................. 24

CERTIFICATE OF SERVICE ...................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Arndt v. Ford Motor Co.,*
716 Fed. App'x 519 (6th Cir. 2017) ....................................................... 12, 22

*Burdett-Foster v. Blue Cross & Blue Shield of Michigan*,
574 Fed.App'x 672 (6th Cir. 2014) .................................................................3

*Cehrs v. Northeast Ohio Alzheimer's, et al.,*
155 F.3d 775 (6th Cir. 1998) ...........................................................................5

*Deister v. Auto Club Ins. Ass'n.,*
91 F. Supp 3d 905 (ED Mich. 2015) ..............................................................2

*Deister v. Auto Club Ins. Ass'n.,*
647 Fed.App'x 652 (6th Cir. 2016) .................................................................3

*Kennedy v. Dresser Rand Co.,*
193 F.3d 120 (2nd Cir. 1999) ..........................................................................6

*Laster* v. *City of Kalamazoo*,
746 F.3d 714 (6th Cir. 2014) ....................................................................... 19

*Smith v. Henderson*,
376 F.3d 529 (6th Cir. 2004) ................................................................ 12, 20

*Talley v. Family Dollar Stores of Ohio,*
542 F.3d 1099 (6th Cir. 2008)............................................... 10, 12, 16, 19, 23

*Tinsley v. Caterpillar Fin. Servs., Corp.*,
766 F. App'x 337, 342 (6th Cir. 2019)............................................................4

*US Airways, Inc. v. Barnett*,
535 U.S. 391 (2002)..........................................................................................5

## **STATUTES**

29 C.F.R. §1630.2 (o) ...................................................................... 17
29 C.F.R. §1630.2(o)(3) ................................................................. 12

## I.     <u>INTRODUCTION</u>

This case was decided on summary judgment.  The facts are to be viewed in a light most favorable to Plaintiff. Despite this settled principle, in its brief, Defendant repeatedly does the opposite.

Defendant says that Plaintiff's request for a change in supervision was unreasonable as a matter of law. However, when viewed in a light most favorable to Plaintiff, jurors could find that in this case, having Plaintiff report to Aeric Bouza, the Service Coordinator, instead of John Wiley, was a reasonable and workable request.

Defendant says it engaged in the interactive process required under the ADA. Yet, there is no dispute that Defendant rejected Plaintiff's request for a change in supervision and refused to discuss or consider any other alternatives that would have allowed Plaintiff to return to work in his same job.  Jurors could also find it significant that despite its flat refusal to consider any changes that would have helped Plaintiff avoid another negative interaction with Wiley, Defendant was in the process of changing its evaluation procedure in a way that would have largely removed John Wiley from the process.

Finally, Defendant says that a reasonable person would not have found the situation sufficiently intolerable to warrant a constructive discharge. But jurors viewing the evidence in a light most favorable to Plaintiff could find that

Defendant's demand that Plaintiff continue to work for Wiley, its failure to engage in the interactive process, and its refusal failure to fully explore ways to accommodate Plaintiff made the situation intolerable for a person with his condition.

As argued more fully below, proper review of the facts in a light most favorable to Plaintiff demonstrates that the district court erred by granting Defendant's motion for summary judgment.

## II.     ARGUMENT

### A.     The District Court Erred in Granting Summary Judgment on Plaintiff's Failure-to-Accommodate Claim

#### 1.     Jurors could find that that Plaintiff requested a reasonable accommodation

##### a.     The change in supervision

Defendant says that in "the Sixth Circuit, a plaintiff's request to work for his preferred supervisor is not a reasonable accommodation request as a matter of law." (Doc 32-1 at 42). But Defendant fails to address the fact that none of the cases it cited below and relied upon by the District Court established a rule that requesting a change in supervision as an accommodation is always unreasonable.

For example, Defendant cites language from *Deister v. Auto Club Ins. Ass'n*, 647 Fed.App'x 652 (6th Cir. 2016). (Doc. 32-1 at 42-43).  However, Defendant overlooks the relevant facts and holding by the court which undermine Defendant's

argument. As noted in Appellant's brief, Deister never even requested a change of supervision as an accommodation. *Id*. at 657.  The panel decision cited a footnote from the district court's opinion in *Diester* where the district court cited *Burdett-Foster v. Blue Cross & Blue Shield of Michigan*, 574 Fed.App'x 672 (6th Cir. 2014) for the proposition that "an employer is not obliged to honor, as a 'reasonable accommodation,' an employee's request for assignment to a different supervisor." *Id*. at note 2. However, the district court's opinion in *Deister* said nothing about changing supervisors as an accommodation. Rather, it cited *Burdett-Foster* only in the context of a transfer as an accommodation. See *Deister v. Auto Club Ins. Ass'n.,* 91 F. Supp 3d 905, 929 (E.D. Mich. 2015) citing *Burdett-Foster* at 680 ("Even if Burdett-Foster had requested a transfer to a new position (and she made clear in her deposition that she had not), such an accommodation is reasonable only if there is another position for which she would have been qualified.").

Defendant says that in *Burdett-Foster*, "This Court affirmed summary judgment in favor of the employer, in part, because plaintiff's request to report to a different supervisor as an accommodation was unreasonable."  (Doc. 32-1 at 43). However, Burdett-Foster's only request for accommodation was to make frequent trips to the bathroom. *Burdett-Foster*, 574 Fed.App'x at 680.  The panel went on to note that her other request which "potentially" amounted to an accommodation – to

remain in the same department but report to a different supervisor – was denied due to her seniority level. *Id.* The court did not say the request was unreasonable. *Id.*

In *Spagnuolo v. Auto Club Grp. Ins. Co*., 2020 U.S. Dist. LEXIS 129176 (E.D. Mich. Jul 22, 2020), another case cited by Defendant, the court held that a request for a different supervisor was "not a reasonable accommodation that an employer is required to provide." *Id*. at * 29. However, the court relied on *Deister* and *Burdett-Foster*, which as noted above, do not establish a per se rule that a request for a different supervisor or different method of supervision is unreasonable on its face.

In short, because neither *Deister* nor *Burdett-Foster* involved a request to change a supervisor, this Court has not addressed the issue, and the court should reject Defendant's assertion that "the Sixth Circuit has uniformly concluded that requests to report to a different supervisor are unreasonable. . .". (Doc. 32-1 at 44-45, note 6). [1]

Defendant also argues that Plaintiff failed to present any evidence that his request to report to a non-managerial coworker was reasonable or to cite any authority that such a request was reasonable. (Doc 32-1 at 44). Defendant is wrong.

---

[1] As noted in Appellant's brief, a change of supervisor was also raised in *Tinsley v. Caterpillar Fin. Servs., Corp.*, 766 Fed.App'x 337, 343 (6th Cir. 2019), but the court did not reach the issue since it determined that Tinsley was not disabled. (See Doc. 29 at Page 39).

In his brief, Plaintiff explained the facts that supported the reasonableness of his request:

> Plaintiff had a difficult interaction with Wiley which resulted in a flare up of his condition requiring treatment and medical leave. Wiley was Plaintiff's supervisor in name only. He and Plaintiff did not have daily or even frequent interaction. Plaintiff saw Wiley about twice a year at group meetings and rarely had any individual interaction with him. Wiley did not direct or oversee Plaintiff's customer service work in the field. Instead, Wiley had had to rely on feedback from others, including Bouza, to evaluate Plaintiff's performance. Except for the task of completing Plaintiff's evaluations, Bouza was effectively Plaintiff's supervisor. Very little needed to change. There was no need for coworkers to know about the accommodation, and no one would have suspected that anything out of the ordinary was happening. All outward appearances would have remained the same.

(Doc. 29 at 37). Plaintiff also explained that Bouza directed Plaintiff's work, had frequent contact with Plaintiff, and provided input for Plaintiff's evaluations. (Id. at 23, 37-38).

In addition, Plaintiff presented legal authority which supported his request for accommodation. Plaintiff cited *US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002) for the proposition that a fact-specific review is required under the ADA and that if a request for accommodation is not in the normal run, the employee must explain why it is reasonable. (Doc. 29 at 35-36). Plaintiff did so.

Plaintiff also cited *Cehrs v. Northeast Ohio Alzheimers, et al.,* 155 F.3d 775 (6th Cir. 1998), for a similar proposition. (Doc. 29 at 35-36). In *Cehrs*, this court rejected the argument Defendant makes here. Defendant asserts a general

prohibition against a change in supervision. However, in *Cehrs*, the court noted that adopting a per se rule against a proposed accommodation is contrary to the intent and purpose of the ADA. According to the court, doing so would relieve the employer from ever having to demonstrate undue hardship and "eviscerates the individualized attention that the Supreme Court has deemed 'essential' in each disability claim." *Id*. at 782.

Finally, Plaintiff relied on *Kennedy v. Dresser Rand Co*., 193 F.3d 120, 123 (2nd Cir. 1999), where the court addressed an employee's request for a different supervisor and held that "A per se rule stating that the replacement of a supervisor can never be a reasonable accommodation is therefore inconsistent with our ADA case law." The court stated that there is a presumption against changing supervisors, but as in all cases, "the plaintiff must demonstrate the reasonableness of the request in the context of the plaintiff's workplace." *Id*. As noted above, Plaintiff did so.

Although Defendant says Plaintiff tries to "muddy the issue" by arguing that the district court should have applied a fact specific assessment of the reasonableness of Plaintiff's request (Doc. 32-1 at 44), the above cases make it clear that such an analysis is required in cases of disability discrimination.

Defendant argues that the district court addressed the specific facts of this case when it determined that the company was not obliged to accommodate Plaintiff by assigning a coworker to supervise him. (Doc 32-1 at 44-45). Defendant continues to

6

portray Bouza as a mere coworker, but jurors could find otherwise. Bouza was not a Field Service Engineer (FSE) like Plaintiff. He was the Service Coordinator for about 40 FSEs in the Injection Molding Machine (IMM) Division. (RE 44, Wiley depo. at Page ID # 191-92). Bouza determined the training that FSEs needed and their progression in the role. (Id. at # 193). Bouza gave Plaintiff and the other IMM FSEs their daily work assignments. (Id. and RE 45, Tomlinson depo at 77, 87-88, Page ID # 313, 316). Bouza was Plaintiff's point of contact for trouble-shooting repair and customer issues. (Id.). Bouza was the person Plaintiff and other FSEs called for assistance while they were at customer sites. (Id.). Bouza matched the skill sets of the FSEs with the jobs in the field that needed to be done. (RE 44 Wiley depo at Page ID # 194). Finally, Wiley looked to Bouza for input on Plaintiff's performance and that of other FSEs. (RE 45 Wiley depo. at Page ID # 208, 216, 270).

In addition, and contrary to Defendant's assertion, Plaintiff was not attempting to "hand-select a non-supervisory coworker to be his supervisor." (Doc. 32-1 at 45).[2]   As a practical matter, Bouza already effectively functioned as Plaintiff's supervisor, and Defendant acknowledged his elevated role when it

_____

[2] Defendant incorrectly asserts that Plaintiff claimed that Defendant changed its "reporting structure." (Doc 32-1 at 37). Plaintiff wrote only that Defendant changed its structure so that Bouza did the evaluations instead of Wiley. (See Doc. 29 at page 24 and 43-44).

selected him to do evaluations for the IMM FSEs as part of Defendant's "lessons learned" from its investigation of Plaintiff's complaint.

Given the above, it was error for the district court to overlook the substantial duties and inputs described above and conclude that Bouza was a mere coworker of Plaintiff. (RE 62 at Page ID # 764 and # 750). Bouza was clearly at a higher level and had substantially more responsibility than Plaintiff.

Defendant portrays the change in the performance review process as minimal, arguing that Bouza did nothing more than the initial draft of the evaluation. (Doc. 32-1 at 45). Even if that was all he did, it would have been a change welcomed by Plaintiff and it would have lessened the chance of Plaintiff being subjected to Wiley's aggressive and demeaning conduct again.

Defendant says that the reasonableness of a request for accommodation must be judged at the time it was made. (Doc. 32-1 at 45).  As noted above, given the facts and circumstances of this case, jurors could find that Plaintiff's request was reasonable when he made it in late July of 2018.

In addition, Defendant rejected Plaintiff's request in early August of 2018. (RE 43 Beene-Skuban depo. at Page ID # 133). However, on August 21, 2018, three days before Plaintiff resigned, Defendant discussed changing the evaluation process. (RE Hemmerle depo. at 44; RE 43, Beene-Skuban depo. at 47-48, Page ID # 155-156; and RE 44, Wiley depo. at Page ID # 273). The change was implemented for

the next cycle of employee evaluations that were conducted in early 2019. (RE 52 Hemmerle depo. at 45, Page ID # 693 and RE 50-2, depo. Ex. 32 at Page ID # 595). Despite knowing that Plaintiff had concerns about Wiley and that Plaintiff was looking for a change in supervision, Defendant never told Plaintiff that it was likely Bouza, not Wiley, would be completing his next evaluation.

Plaintiff is not making this argument in hindsight. Defendant's change in the evaluation procedure was in the works prior to Plaintiff's resignation. The fact that Defendant changed its review process demonstrates both the reasonableness of Plaintiff's request and the absence of undue hardship to Defendant.

Defendant's hyperbole notwithstanding, no "practical absurdity" would have resulted from Plaintiff's request for Aeric Bouza, the Service Coordinator, to act as his supervisor instead of Wiley. (Doc 32-1 at 46).  Defendant takes Plaintiff's request to the extreme, arguing that this minor change in supervision, unique to Plaintiff and imperceptible to anyone besides Plaintiff, Wiley and Bouza, would negatively impact its business and allow Plaintiff the luxury of "permanent immunity from criticism." (Doc. 32-1 at 46).  Plaintiff never asked for or expected that. Plaintiff acknowledged that he had some shortcomings. He testified that he could accept constructive criticism. (RE 45 Tomlinson depo. at 151-152 at Page ID #332). However, in light of his condition and prior interaction with Wiley, Plaintiff simply

wanted to know that if criticism was coming, it would not be delivered in the same abusive and harsh manner that Wiley used in the past.

### b. The expected group call with management prior to Plaintiff's return to work

Plaintiff's request for a group call to occur before he returned to work was also reasonable. This court addressed a similar situation in *Talley v. Family Dollar Stores of Ohio,* 542 F.3d 1099 (6th Cir. 2008) and noted that through the meeting, "the parties might have further discussed and resolved what accommodations could allow Talley to return to work without presenting an undue hardship for the company." *Id.* at 1109.

Defendant says the earliest mention of such a call was during Plaintiff's deposition and that it appears to be an "after the fact invention." (Doc. 32-1 at 32). The record proves otherwise. Plaintiff first referred to the call in his May 1, 2020 answers to interrogatories. Although Defendant cites one portion of Plaintiff's responses, he clearly stated in an earlier answer that Beene-Skuban agreed that the call would occur before he returned:

> "Plaintiff was anxious about returning to work and wanted the situation worked out *before* he came back so he would feel comfortable about returning. He wanted the know the matter was resolved in order to get better and return to work. Jenny Beene-Skuban said they would schedule a call *before* Plaintiff returned to work to have a discussion with Hemmerle, Wiley and Jenny Beene-Skuban, but they kept putting if off."

(RE 45-3 at Page ID # 400)(emphasis added).

In his March 22, 2021 deposition, Plaintiff testified again about the purpose of the meeting. (RE 45 at Page ID # 334)(". . . we were supposed to have this group call . . .about helping me feel better about what they were going to do about coming back.").

Plaintiff addressed the meeting again in his June 30, 2021 declaration:

One of my main concerns about returning to work in the summer of 2018 was being in another situation where John Wiley would again engage in aggressive and hostile behavior toward me. My fear was that it would lead to another episode of extreme anxiety causing additional psychological upset, negative feelings, isolation, and withdrawal from others that required further medical treatment and medication adjustments. I was also concerned that John Wiley might retaliate against me for complaining about discrimination and his conduct. *As a result, I wanted to have a discussion before I returned to work so that everyone involved would better understand my condition and take steps to avoid conduct or comments that could trigger another negative reaction. I also wanted to feel comfortable that I was returning to a safe, healthy, and receptive environment.*

(RE 50-1 Page ID # 564)(emphasis ours).

Plaintiff's recovery and ability to return to work depended on having the meeting and being assured that the issues that precipitated his earlier episode with Wiley, resulting in the need for medical leave, were addressed and would not be repeated.

In sum, jurors could find that Plaintiff's request for a change in supervision was reasonable under the circumstances and in the context of his workplace.

11

Plaintiff's request for a meeting prior to his return to work was also reasonable. Defendant's arguments in support of the district court's decision fail.

## 2.    Jurors could find Defendant failed to engage in the interactive process

An employee's request for a reasonable accommodation triggers the employer's mandatory duty "to participate, in good faith, in an 'interactive process' with [a plaintiff] as to potential reasonable accommodations." *Smith v. Henderson*, 376 F.3d 529, 536 (6th Cir. 2004) (quoting 29 C.F.R. § 1630.2(o)(3)); *see also Talley*, supra, 542 F.3d at 1110 ("[T]he interactive process is mandatory and both parties have a duty to participate in good faith."). A jury could find that Defendant failed and refused to engage in the interactive process.

Defendant rejected Plaintiff's request for a change in supervision because it was inconsistent with Defendant's "structure." (RE 43, Beene-Skuban depo. at 36, Page ID # 144). Defendant offered no alternatives to Plaintiff. Defendant attempts to avoid its failure to engage in any discussion about a change in supervision by pointing to its conduct before Plaintiff's request. (Doc. 32-1 at 47-48). However, the issue is whether Defendant engaged in the interactive process to address Plaintiff's specific request for a change in supervision, not what it may have done before then. See *Arndt v. Ford Motor Co.*, 716 Fed.App'x 519, 528 (6th Cir. 2017) (the "relevant

12

interactive process was not triggered until Arndt was released to return to work with the service-dog restriction and made his second request for accommodation.").

Despite its outright refusal to consider any change in supervision or related alternatives, Defendant claims Plaintiff was responsible for the breakdown of the interactive process due to his "abrupt resignation." (Doc. 32-1 at 49). However, Plaintiff did not resign until *after* Defendant rejected his request and failed to offer any other options. Defendant made it clear in early August of 2018 that it was not going to engage in any conversation about a change in supervision and that if Plaintiff returned, he needed to report to Wiley. (RE 43 Beene-Skuban depo. at Page ID # 133).

In addition, because Defendant refused to discuss Plaintiff's request to report to Bouza, other reasonable accommodations as encouraged by the Equal Employment Opportunity Commission, such as changing the method of supervision, were never explored. (See EEOC Guidance on the ADA and Psychiatric Disabilities, RE 50-3 at Page ID # 623) (the ADA may require that supervisory methods be altered as a form of reasonable accommodation.). For example, if Wiley truly was the only person who could complete Plaintiff's evaluation, Defendant could have considered having Bouza or Randy Hemmerle, the Director of Human Resources, go over the ratings and comments with Plaintiff. Wiley would have still done the appraisal, but the likelihood of another demeaning conversation like the one that

aggravated Plaintiff's condition would have been minimized. And if Wiley needed to be the person who discussed the evaluation with Plaintiff, it would have been reasonable to have Bouza, Hemmerle, or Beene-Skuban there to help Plaintiff feel more comfortable and to minimize the potential for exposing Plaintiff to another event that would trigger his PTSD. Alternatively, and as often occurs in cases of hostile environment and harassment, Defendant could have implemented a temporary change in supervision for Plaintiff that would have allowed him to return to work. All of the above were reasonable alternatives that could have been explored through the interactive process. None would have been an admission that Wiley or Defendant had done anything improper. Instead, making the changes would simply be an acknowledgment that due to Plaintiff's condition, an accommodation was necessary.

Finally, it is undisputed that on August 21, 2018, three days before Plaintiff resigned, Defendant discussed the "lessons learned" from its investigation of Plaintiff's complaint. (RE 45-19 at Page ID # 437 and RE 50-2 at Page ID # 616). One of the changes resulting from the lessons learned discussion was to have Aeric Bouza perform the evaluations of the Field Service Technicians in his group (which included Plaintiff) instead of Wiley. (RE 52, Hemmerle depo. at 44-45, Page ID # 692-93; RE 43, Beene-Skuban depo. at 47-48, Page ID # 155-166). The modification in Defendant's evaluation process was consistent with Plaintiff's request to work

with Bouza instead of Wiley. Defendant knew or should have known that this new evaluation process fell under the umbrella of Plaintiff's request for a change in supervision. Yet, it said nothing to Plaintiff about it at the time.

The district court said nothing in its decision about Defendant modifying its evaluation process shortly after Plaintiff requested a change in supervision. Defendant tries to divert attention from the district court's error by twisting Plaintiff's argument. Defendant says the "important fact" asserted by Plaintiff was that "Bouza is listed as a "Manager" on an evaluation performed after Plaintiff's constructive discharge. (Doc 32-1 at Page 34, note 3). Defendant is wrong.[3]

The important and undisputed fact noted by Plaintiff was that that as one of the "lessons learned" from its investigation of Plaintiff's complaint, Defendant changed course and had Bouza complete the annual performance evaluations for all of the IMM FSE's instead of Wiley. This demonstrated the reasonableness of Plaintiff's request and the lack of undue hardship. That Bouza was listed as the "manager" on one of the FSE's evaluations simply confirmed the undisputed fact

---

[3] Although Defendant claims that Bouza was listed as the "Manager" due to its "software," Defendant's record citations do not support the statement. (Doc. 32-1 at 34 note 3). Wiley acknowledged that Bouza was listed as the "manager" after the "lessons learned" discussion resulting from Plaintiff's complaint. (RE 44 Wiley depo. at Page ID # 273). Defendant says Bouza testified about the matter, but his deposition was never filed.

that he did the evaluations instead of Wiley in early 2019. (RE 50-2, Wiley depo. Ex. 32 at Page ID # 595).

Defendant knew that Plaintiff suffered from PTSD. Defendant knew that Plaintiff believed that Wiley exacerbated his condition. Defendant knew that Plaintiff asked for a change in supervision.  Because Defendant failed to engage in the interactive process, there was no discussion about any reasonable alternatives, and none were offered.

Plaintiff asserts that Defendant failed to engage in the interactive process when it refused to discuss his request for a change in supervision and refused to consider or offer any alternatives. On the other hand, Defendant claims Plaintiff was responsible for terminating the process when he resigned.  While Plaintiff's believes there is no basis for Defendant's assertion, at a minimum, this is a question for the jury. *See Talley*, 542 F.3d at 1110 (fact question existed as to who caused the breakdown in the interactive process where the employer failed to set up promised meetings to discuss the plaintiff's requests for a stool and did not return her calls asking about it).

### 3.    Jurors could find that Defendant would not have suffered any undue hardship

Defendant offers no evidence of undue hardship. (Doc. 32-1 at 50-51). Instead, it briefly argues that its burden to prove undue hardship never arose because,

in its view, Plaintiff's request for accommodation was unreasonable and because Plaintiff allegedly terminated the interactive process.  (Id. at 50).  Defendant is wrong.

Defendant's argument assumes that Plaintiff's request for a change in supervision was unreasonable. As argued above, given the facts of this case, it was not.  In addition, per the previously cited EEOC Guidance, Defendant also had an obligation to address other potential alternatives such as changing supervisory methods for Plaintiff. Defendant refused to do so.

Defendant's argument also assumes it had no obligation to engage in the interactive process simply because Plaintiff's request was inconsistent with the company's "structure." (RE 43, Beene-Skuban depo. at 36, Page ID # 144).  But as argued above, the ADA requires employers to explore accommodations even if they are outside the usual way of doing things. See 29 CFR 1630.2(o) and Pt. 1630, App. § 1630.2(o)(noting that accommodation may be any change in the work environment *or in the way things are customarily done that enables an individual with a disability to enjoy equal employment opportunities*.")(emphasis ours).

Plaintiff did not refuse the offer to meet as alleged by Defendant. (Doc. 32-1 at 32).  He agreed to have the meeting when Defendant finished the interviews it conducted as part of its investigation. (RE 50-2 at Page ID # 603)("When you are finished talking to who you want to we can have our conference…"). The pre-return

meeting was vital to Plaintiff's ability to return to work. Defendant claims it did not want to have the meeting until Plaintiff returned to work out of respect for his medical condition. (Doc. 32-1 at 33). Jurors could find this explanation to be pretextual. There were ongoing communications with Plaintiff while he was on medical leave, including interviews with Beene-Skuban on July 26, 2018 and August 7, 2018. (See Doc. 32-1 at 33, RE 45-18 at Page ID # 452-453, and RE 50-2 Page ID # 601 and 609).

In any event, since Defendant was willing to meet with Plaintiff when he returned from medical leave, there was no undue hardship in having the meeting or group call before Plaintiff came back. (See August 20, 2018 email from Beene-Skuban to Plaintiff, RE 45-19 at Page ID # 457) ("3) once Curt returns from medical leave, a face-to-face meeting between Curt and John, with legal and HR facilitating, in order to make sure that the parties involved feel heard and are able to move forward.").

In sum, Defendant has offered no evidence to show that a change in Plaintiff's supervision, finding alternate methods of supervising him, or a pre-return meeting would have resulted in any undue hardship. As a result, jurors could find that Defendant failed to meet its burden under the ADA.

**B.** **The District Court Erred in Granting Summary Judgment on Plaintiff's Retaliation Claim**

    **1.** **Plaintiff suffered an adverse employment action**

There is no dispute that the failure to accommodate a disability and a constructive discharge are adverse actions. *Laster* v. *City of Kalamazoo*, 746 F.3d 714, 727-728 (6th Cir. 2014) *citing Koscis v. Multi-Care Mgmt. Inc*., 97 F.3d 876, 886 (6th Cir. 1996) (employee may establish an adverse employment action by demonstrating that he was constructively discharged). As a result, if, as argued above, jurors find that Defendant failed to accommodate Plaintiff and/or that he was constructively discharged, there would be an adverse action supporting the retaliation claim.

    **2.** **Defendant's conduct resulted in Plaintiff's constructive discharge**

Defendant argues that Wiley's conduct should not be considered as part of the constructive discharge analysis because a person who did not suffer from PTSD would not have reacted the same way to Wiley's criticism. (Doc. 32-1 at 53). However, when a constructive discharge results from the employer's failure to address and/or accommodate a disability, courts and juries are free to consider how the disability played a role in the employee's decision to resign. In *Talley*, supra the court stated:

"Assuming that Talley was denied a reasonable accommodation that forced her to work in excess of her medical restrictions, a reasonable jury could infer that the defendants knew that *Talley's working conditions would become intolerable to a reasonable person suffering from her particular disability.*"

542 F.3d at 1109 (emphasis ours).

Similarly, in *Smith v. Henderson*, supra, the plaintiff raised a jury question regarding her constructive discharge. The court noted that reasonable jurors could infer that the repeated failure to accommodate Smith's request would "cause her working conditions to become intolerable *for a reasonable person suffering from her particular disability*." 376 F. 3d at 534 (emphasis ours). Defendant's assertion that Plaintiff's condition and resulting reaction should be disregarded is contrary to the above cases. It is for jurors to decide if the working conditions were intolerable for Plaintiff in light of his condition and Defendant's failure to accommodate him in a way that would avert another severe mental health event.

Defendant says that Plaintiff's reliance on the lack of a pre-return call to establish a constructive discharge is "illogical and misplaced" since Plaintiff sought other employment before resigning, which mooted the need for the call. (Doc. 32-1 at 55). Jurors could easily disagree.

First, the pre-return discussion at issue here is similar to the meeting that the plaintiff in *Talley* expected to occur and which the court found supported her constructive discharge. The court noted that at the meeting, "the parties might have

further discussed and resolved what accommodations could allow Talley to return to work without presenting an undue hardship for the company."  542 F.3d at 1109. The same is true here.

Second, Ms. Beene-Skuban advised Plaintiff on July 31, 2018 that the group call or meeting would occur if he returned to work. (RE 50-2 at Page ID # 603)("Please also consider when you might be in a place where you can sit down with me and Randy and John, which, should you return to work, should happen regardless of the outcome on my investigation."). This was before Plaintiff was offered employment by Avure. The need for the call or meeting still existed. It was not moot.

Third, Plaintiff did not resign until August 24, 2018, nearly a month after Defendant told him the group call or meeting would occur if he returned to work. Plaintiff retained the option to forego new employment and return to Defendant if Defendant would have accommodated him. Instead, Defendant deliberately created an intolerable working environment for Plaintiff.  Defendant knew that due to his disability, Plaintiff had concerns about being exposed to an interaction with Wiley that would trigger another strong emotional reaction. Still, Defendant refused to even discuss a change in supervision or supervisory methods with Plaintiff.  Defendant made it clear that if Plaintiff returned to work, he would have to report to Wiley. (RE 43, Beene-Skuban depo. at Page ID # 133, 144-45).

Defendant says Plaintiff failed to address *Arndt v. Ford Motor Co.*, 716 Fed.App'x 519 (6th Cir. 2017), a case it cited below. (Doc. 32-1 at 57). However, the district court did not rely on *Arndt* in ruling on the constructive discharge issue, perhaps because it is not on point. (RE 62 Opinion at Page ID # 767-768). *Arndt* is easily distinguishable since "Arndt withdrew his first request [for accommodation] and Ford was actively evaluating his second request when he resigned." 716 Fed.App'x at 30. That is not what happened here. Plaintiff resigned *after* his request for accommodation was rejected; *after* Defendant refused to address or discuss alternate methods of supervision; and, as in *Talley*, *after* Defendant failed to schedule a meeting to work out any issues or concerns before Plaintiff returned to work. In addition, Defendant never told Plaintiff *before* he resigned that it was considering having Bouza perform evaluations instead of Wiley. Surely, this is information that, if disclosed to Plaintiff, would have made a difference in his decision. Jurors could find that Defendant's failure to do so is evidence of its desire not to have Plaintiff return.

In sum, as in *Smith* and *Talley*, jurors could find that Defendant's failure to accommodate Plaintiff and its refusal to address his concerns about continued interactions with Wiley resulted in an intolerable situation. Defendant denied Plaintiff's request for a change in supervision and offered no other alternative. Whether the situation was intolerable was a question for the jury, and the district

court erred in concluding otherwise. As in *Talley*, a jury could find that Plaintiff's resignation was both intended and foreseeable.  542 F.3d at 1109

## III.    <u>CONCLUSION</u>

As set forth above and in Appellant's Brief, the district court erred in granting Defendant's motion for summary judgment.  There were disputed issues of fact regarding Plaintiff's requests for accommodation, Defendant's failure to engage in the interactive process, the existence of undue hardship, and Plaintiff's constructive discharge. These were issues for the jury.

Plaintiff respectfully requests that the decision of the district court be reversed and that this matter be remanded for trial.

Respectfully submitted,

s/ David Torchia
David Torchia (0015962)
Tobias, Torchia & Simon
302 Mercantile Center
120 E. Fourth Street
Cincinnati, OH  45202
(513) 241-8137
davet@tklaw.com
Attorney for Plaintiff-Appellant

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(a)(7)(C), Counsel for Appellant certifies that Appellant's brief contains 5,529  words between pages 1 and 23.

s/ David Torchia
David Torchia

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was filed electronically on July 5, 2022 and will be served upon all counsel of record via the court's ECF system.

s/ David Torchia
David Torchia